## TEXAS INDEPENDENT PRODUCERS LEGAL ACTION ASSOCIATION, Plaintiff,

v.

## INTERNAL REVENUE SERVICE, et al., Defendants.

### Civ. A. No. 83–1029.

United States District Court, District of Columbia.

Dec. 21, 1984.

As Amended April 18, 1985.

---

Stephen M. Sacks, James X. Dempsey, Arnold & Porter, Washington, D.C., James Craig Dodd, Jones, Gungoll, Jackson, Collins & Dodd, Enid, Okl., for plaintiff.

J. Brian Ferrel, Michael J. Kearns, Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S. and Dept. of Treasury.

Barbara L. Gordon, Christopher A. Kerosky, Civil Division, U.S. Dept. of Justice, Washington, D.C., for Office of Management and Budget, Dept. of Energy, and Presidential Task Force for Regulatory Relief.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on defendants' respective motions for summary judgment regarding plaintiff's request for documents under the Freedom of Information Act ("FOIA"), plaintiff's opposition thereto, defendants' mutual reply, and the parties' supplemental responses; plaintiff's motion for further limited discovery, and defendants' opposition thereto; plaintiff's motion to amend its complaint, defendant Department of the Treasury's ("Treasury") opposition thereto, and plaintiff's reply; and the entire record herein.

For the reasons stated below, the Court grants defendants' motions for summary judgment, and denies plaintiff's motions for further limited discovery and to amend its complaint.

## I.

### Statement of Facts

On March 7, 1983, plaintiff filed a written FOIA request with defendants Internal Revenue Service ("IRS") and Treasury, and five other federal agencies. Plaintiff requested access to agency documents pertaining to the development of two proposed Treasury regulations: (1) a proposed regulation defining oil from a stripper well property for purposes of the windfall profit tax, 48 Fed.Reg. 2552 (1983) (to be codified at 26 C.F.R. § 51); and (2) a proposed regulation defining "property" for purposes of the windfall profit tax, 47 Fed. Reg. 50,924 (1982) (to be codified at 26 C.F.R. § 51).

The request was specifically for, *inter alia,* "all written documents of whatever type or kind, including, but not limited to, all correspondence, notes, position papers, reports and memoranda generated by, received by, or relied upon by any designated agencies in any manner whatsoever in connection with the consideration or promulgation of the proposed rule[s]." Plaintiff's Memorandum in Opposition to the Motions for Summary Judgment by the IRS and the Treasury, and in Support of Plaintiff's Motion for *In Camera* Inspection and Request for Further Limited Discovery ("Plaintiff's Opposition") at 2.

Having received no response from the agencies, plaintiff filed the instant action on April 8, 1983, seeking injunctive and declaratory relief. Complaint for Injunctive and Declaratory Relief ¶¶ 22–38. Concurrently, plaintiff filed a motion for preliminary injunction and thereafter a motion for a temporary restraining order to enjoin defendant IRS from conducting a public hearing on the proposed regulation defin-

ing oil from a stripper well. Plaintiff's Motion for Preliminary Injunction at 1–2.

The Court denied the motions to enjoin,[1] but granted plaintiff's companion motion for a *Vaughn* index[2] and required defendants to prepare expeditiously a detailed justification, itemization, and index of the withheld documents.

On May 9, 1983, defendants IRS and Treasury answered the complaint and claimed as affirmative defenses that the documents were withheld properly under the deliberative process privilege, 5 U.S.C. § 552(b)(5) (1977), and that five documents also were protected from disclosure as taxpayer return information, 26 U.S.C. § 6103 (1980). Answer of IRS at 4; Answer of Treasury at 3.

Plaintiff thereafter filed a motion for *in camera* inspection of the withheld documents and requests for admissions and interrogatory against defendant IRS. Defendant admitted each request, claiming that it did not possess any documents relating to the proposed regulations that contained technical or scientific information, potential economic impact studies, cost/benefit analysis, potential revenue enhancement capacity studies, an intention to generate additional tax revenue, or ongoing or troublesome litigation of the June 1979 Energy Regulations. Responses to Requests for Admissions of Fact (filed July 8, 1983).

Defendants IRS and Treasury then filed the instant motions for summary judgment. Subsequently, plaintiff filed a motion to amend its complaint and opposition to defendants' motions. To assist the Court in its consideration of the summary judgment motions, the Court granted plaintiff's motion for *in camera* inspection.

Since the filing of the instant action, defendants have released several requested documents in whole or in part. Statement of IRS of Material Facts as to Which There is No Genuine Issue ¶ 40; Statement of Treasury of Material Facts as to Which There is No Genuine Issue ¶ 40. Another 156 documents or portions thereof remain withheld by defendants.

In their motions, both defendants contend that the requested documents have been withheld properly pursuant to the deliberative process privilege, 5 U.S.C. § 552(b)(5) (1977) ("Exemption 5"). Additionally, defendant IRS claims that five of its documents are protected under the statutory exemption for taxpayer return information, 26 U.S.C. § 6103 (1980).

Plaintiff, however, asserts that the adequacy of defendants' identification and search processes are genuinely in issue. Specifically, plaintiff argues that material questions are raised by: (1) inadequate *Vaughn* indices describing the documents; (2) inadequate proof of segregation and disclosure of purely factual information and expert names and opinions; (3) inadequate affidavits describing the retrieval process; (4) inconsistencies in the *Vaughn* indices and defendant IRS's answers to the requests for admissions; and (5) defendants' creation of "secret" working agency law to avoid compliance with Executive Order 12,291, 46 Fed.Reg. 13,193 (1981).

Plaintiff contends that these FOIA violations preclude the Court from granting the motions for summary judgment and require further limited discovery by plaintiff.

## II.

### Conclusions of Law

As in other Federal cases, the Court may grant summary judgment in a FOIA case only if the moving party proves that no

---

**1.** A public hearing on the proposed regulation defining oil from a stripper well occurred on April 27, 1983. Plaintiff's representative was present and spoke in behalf of plaintiff. Answer of IRS ¶ 40. A hearing on the proposed regulation defining "property" took place on March 1, 1983, before plaintiff filed the instant action.

**2.** An index of withheld documents detailing the justification for exemption claims is required under *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

substantive and material facts are in dispute and that the movant is entitled to summary judgment as a matter of law; Fed.R.Civ.P. 56; *Perry v. Block,* 684 F.2d 121, 126 (D.C.Cir.1982).

■■■ To meet this standard, the burden is on defendants to prove that all the requested documents either have been produced, are unidentifiable, or are wholly or partially exempt from disclosure. The Court must rely on government affidavits and *Vaughn* indices describing the withheld documents to determine the adequacy of agency identification and retrieval efforts. Accordingly, the affidavits and indices " 'must be relatively detailed and nonconclusory and must be submitted in good faith.' " *Perry v. Block,* 684 F.2d at 126 (quoting *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

■■■ "[I]f the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Founding Church of Scientology of Washington, D.C. v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979). Even if the agency submits sufficiently detailed affidavits and indices, the requester of documents may nonetheless produce countervailing evidence that places the agency's identification or retrieval process genuinely in issue. *Id.*

The Court will consider whether defendants have met their burden of establishing proper nondisclosure under Exemption 5 and section 6103, and will address each of plaintiff's challenges to defendants' identification and retrieval procedures.

## A. *Exemption 5*

Exemption 5 of FOIA permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (1977).

The United States Supreme Court has held that this exemption protects the " 'de-cision making processes of government agencies' " and includes documents " 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (citations omitted).

The policy behind the exemption is to avoid inhibiting the " 'frank discussion of legal or policy matters' in writing" and thus adversely affecting the quality of agency decisions and policies. *Id.* (Citation omitted).

■■■ But the exemption is limited to prevent unnecessary withholding of agency documents. Congress "expressly intended 'to delimit the exception [5] as narrowly as consistent with efficient Government operation.' " *Environmental Protection Agency v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973) (quoting S.Rep. No. 813, p. 9); *see* H.R.Rep. No. 1497, p. 10, U.S.Code Cong. & Admin.News 1966, pp. 2418, 2427. Therefore, Exemption 5 does not protect post-decisional communications, which explain agency action already taken or a decision already made. Nor may the agency withhold documents that have the force or effect of agency law. "Exemption 5, properly construed, calls for 'disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.' " *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. at 153, 95 S.Ct. at 1517 (quoting Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 797 (1967)).

In *Coastal States Gas Corporation v. Department of Energy,* the Court of Appeals for the District of Columbia required documents protected under Exemption 5 to be both predecisional and deliberative. "In deciding whether a document should be protected by the privilege we look to

whether the document is 'predecisional'—whether it was generated *before* the adoption of an agency policy—and whether the document is 'deliberative'—whether it reflects the give-and-take of the consultative process." 617 F.2d 854, 866 (D.C.Cir.1980) (emphasis in original). This analysis requires the Court to consider the purposes of the privilege and decide whether the document is: (1) "so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency;" (2) a recommendation or draft of a final agency decision; or (3) a document weighing the pros and cons of alternative viewpoints. *Id.*

Important to the Court's decision is the role that the protected documents play in the administrative process. The documents more likely will be predecisional and deliberative if they are part of a clear decision-making process, if the review procedure flows from subordinate to superior agency officials, and if the documents are neither formally or informally adopted by the agency nor used in dealing with the public. *Id.* at 866–68; *Taxation With Representation Fund v. Internal Revenue Service,* 646 F.2d 666, 678–81 (D.C.Cir.1981).

In the instant case, the affidavits submitted with defendants' motions for summary judgment describe in great detail the agencies' decision-making processes and the function and significance of the withheld documents. Affidavits of John G. Schmalz and Douglas W. Charnas (attached to Motion by IRS for Summary Judgment); Declaration of Moshe Schuldinger (attached to Motion by Treasury for Summary Judgment).

In summary, the affidavits state that the proposed regulations in question were initially drafted by staff attorneys in the IRS Office of Chief Counsel, Legislation and Regulation Division. Each draft was circulated for review by officials within the IRS, Office of Chief Counsel, and Treasury. After receiving comments on several drafts, final drafts of the Notice of Proposed Rulemaking, Policy Memorandum, and Transmittal Memorandum were submitted to and approved by the IRS Commissioner and Assistant Secretary for Tax Policy. The Notice of Proposed Rulemaking was published in the *Federal Register.* Defendants released the final drafts to plaintiff. Affidavit of John G. Schmalz ¶ 9; Affidavit of Douglas W. Charnas ¶ 11.

Formulation of the proposed regulation defining "property" for purposes of the Windfall Profit Tax Act involved several additional steps because of a disagreement among agency officials as to the proper definition. The IRS Commissioner ordered a survey of the cost and ease of administration of alternative definitions. The issue was resolved by a policy committee for which a memorandum was drafted outlining the various positions. Affidavit of Douglas W. Charnas ¶¶ 8–10.

In the Treasury, the Assistant for Energy Tax Policy reviewed and commented on the initial drafts prepared by the IRS attorneys. He forwarded the final drafts to the Deputy Assistant Secretary for Tax Policy and then to the Assistant Secretary for Tax Policy for their successive review and approval. Once approved, the final drafts were submitted to the Executive Secretary to the Secretary of the Treasury to determine if the proposed regulations needed review by the Secretary. Declaration of Moshe Schuldinger ¶ 4.

The affidavits also specifically indicate where each withheld document fits into this decision-making process. In addition, the *Vaughn* indices more fully describe each document, indicating the source and recipient of the document, the general nature of the contents, and the exemption claimed by the agency. *In camera* review of a sample of the documents supports defendants' description of the decision-making process and documents.

Many of the instant documents are similar to the drafts in *Arthur Andersen & Co. v. Internal Revenue Service,* 679 F.2d 254 (D.C.Cir.1982), which the appellate court upheld as properly exempt.

> On [the] face [of the documents] there appear the number, identities and titles of the various persons in successively

higher positions to whom the drafts were submitted for "approval" and the alterations these persons made in the text.... Thus, the flow of the documents was from subordinate to superior. Because approval was required at each higher level, all the participants up to the Commissioner were without authority to make a final determination.... A comparison of the successive drafts with each other and with the final revenue ruling reveals no policy or reasons explained in these drafts that were not contained in the ruling ultimately published. *The inference we draw from this is that these documents could not and do not serve as agency "working law," providing substantive guidance in future decisions.*

*Id.* at 259 (emphasis added).

Similarly, the successive drafts with accompanying comments in the instant case do not serve as agency "working law." Nor do the other withheld documents containing discussions of alternative viewpoints, analyses of key facts supporting a particular position, or personal opinions concerning the content of the proposed regulations. All of these documents were developed and utilized in the decision-making process. Plaintiff presents no evidence that any of these documents will be indexed and consulted as final agency opinions. *See Taxation With Representation Fund v. Internal Revenue Service,* 646 F.2d at 682–84.

Plaintiff claims that one document described in the supplemental Treasury index is "clear evidence of the defendants' [secret] working law policies ... to avoid regulatory review of their proposed regulations" under Executive Order 12,291,[3] 46 Fed.Reg. 13,193 (1981). Plaintiff's Opposition at 34. The document, 17–TD 7690, is described in the index and Treasury affidavit as "the author's opinion that no regulatory impact statement is required for Treasury regulations under the Crude Oil Wind-

fall Profit Tax Act." Declaration of Moshe Schuldinger ¶ 11; Supplemental Index by Treasury of Documents at Issue ("Supplemental Index by Treasury"), Document Number 17–TD 7690. The author was was a staff attorney in the Office of the Assistant Secretary for Tax Policy. *Id.*

In the published Notice of Proposed Rulemaking, the IRS Commissioner stated that a regulatory impact statement was not required under Executive Order 12,291 for the proposed regulation defining oil from a stripper well property. 48 Fed.Reg. 2552, 2553. This, however, is insufficient to prove that the agencies adopted the staff attorney's opinion that *all* regulations under the Windfall Profit Tax Act do not require a regulatory impact statement. The document "was prepared to assist Treasury and the Internal Revenue Service in deciding which tax regulations should be subject to regulatory analysis." Supplemental Index by Treasury, Document Number 17–TD 7690. The Treasury's affidavit denies that this document constitutes "secret law" of the agency, Affidavit of Mosche Schuldinger ¶ 11, and plaintiff presents no further evidence to the contrary.

▮ The Court, therefore, rejects plaintiff's contention that secret agency law exists to avoid compliance with Executive Order 12,291.

Although plaintiff does not directly attack the predecisional and deliberative nature of the withheld documents, plaintiff raises several issues concerning the sufficiency of defendants' identification and retrieval procedures.

### 1. *Vaughn* Index

First, plaintiff asserts that defendants' *Vaughn* indices fail to justify adequately the withholding of requested documents. Plaintiff's Opposition at 23–28.

---

**3.** Pursuant to Executive Order 12,291, the Treasury signed a Memorandum of Agreement which requires the agency to alert the Office of Management and Budget to any major regula-

tion, or "non-major regulation that reasonably could be expected to have a significant economic impact." Exhibit 34 to Plaintiff's Opposition.

To meet the summary judgment standard in FOIA cases, an agency's *Vaughn* index "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. United States Department of Air Force*, 566 F.2d 242, 251 (D.C. Cir.1977).

In the instant case, each defendant submitted a *Vaughn* index describing the source and recipient, subject matter, and nature of each document. The index also identified the particular exemption claimed and the reasons that the exemption applied. *See, e.g.*, Partial Index by IRS of Documents at Issue.

The Court agrees with plaintiff that the justifications for the exemptions in the *Vaughn* indices are generally "conclusory statements" consisting of "boilerplate" language. Plaintiff's Opposition at 25–26. The Court, however, need not rely solely on the indices. The affidavits filed with defendants' motions for summary judgment detail the decision-making process and identify how each document fits into that process. *See supra* text at 544.

In addition, *in camera* review of a sample of the withheld documents indicated that the index and affidavit assertions were "reasonably accurate and specific." *Ash Grove Cement Company v. Federal Trade Commission*, 511 F.2d 815, 817 (D.C.Cir.1975). Each document contained the information asserted in the *Vaughn* indices and fell within the agencies' decision-making process.

The purpose of detailed identification of the documents is to provide plaintiff with sufficient information to argue effectively against the agencies' exemption claims. "[L]ack of access of the party seeking disclosure undercuts the traditional adversarial theory of judicial dispute resolution." *Mead Data Central, Inc. v. United States Department of Air Force*, 566 F.2d at 250 (citing *Vaughn v. Rosen*, 484 F.2d 820, 824–25 (D.C.Cir.1973), *cert. denied*, 415

U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

The Court finds that defendants' indices and affidavits together identify sufficiently the withheld documents. The agencies need not provide such a detailed justification that the potentially exempt material would be disclosed. *Id.* at 261.

2. Segregability

Plaintiff also challenges defendants' proof of the nonsegregable nature of the withheld documents. Plaintiff does not allege, however, that any of the documents specifically contain segregable material. Plaintiff's Opposition at 18–23.

Exemption 5 is limited to information that would not be available to a private party in litigation with the agency. Purely factual material, therefore, generally would not be protected. *Environmental Protection Agency v. Mink*, 410 U.S. at 86–88, 93 S.Ct. at 835–836.

But the line between factual and advisory material is not always clear. Exemption 5 protects the deliberative *process*, not just deliberative material. "In some circumstances, ... the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by Section 552(b)(5)." *Mead Data Central, Inc. v. United States Department of Air Force*, 566 F.2d at 256.

Thus, factual material intertwined with the deliberative process is protected. In *Brockway v. Department of Air Force*, the court upheld the withholding of statements by accident witnesses used to establish appropriate Air Force safety policies. 518 F.2d 1184, 1193–94 (8th Cir.1975). The court based its decision in part on the need to encourage the flow of factual material on which opinions and recommendations are based. *Id.* Similar reasoning was followed by the Court of Appeals of the District of Columbia in *Montrose Chemical Corporation of California v. Train*, 491 F.2d 63, 67–68 (D.C.Cir.1974) *cert. denied*,

421 U.S. 963 (1975) (factual summaries revealing internal selection and judgment process protected by Exemption 5).

 In addition, technical or scientific material and expert names and opinions generally are not protected. Opinions of experts outside the agency must be disclosed "unless [they] somehow [reflect] the deliberative process of decision or policy making." *Parke, Davis & Co. v. Califano,* 623 F.2d 1, 6 (6th Cir.1980). If the withheld documents are generated by outside parties at the agency's request, however, the information may be protected. *Soucie v. David,* 448 F.2d 1067, 1078 n. 44 (D.C. Cir.1971).

Defendants claim that all portions of the withheld documents reflect the decision-making process and, therefore, are exempt. Plaintiff argues that "[i]t is extremely unlikely that none of these pages contain any segregable factual material, technical or scientific information, or comments, opinions or names of expert consultants." Plaintiff's Opposition at 21.

Plaintiff's argument is based on pure speculation and assumptions. Plaintiff has presented no evidence other than titles and sources of documents listed in the *Vaughn* indices to support its argument. For example, plaintiff assumes a document from the Engineering and Valuation Branch of the IRS contains segregable scientific or technical material. Plaintiff's Opposition at 7. In contradiction, defendants filed affidavits denying the existence or reliance on scientific or technical information or expert opinions. Affidavit of John G. Schmalz ¶¶ 6–7, 12–13, 15 (filed Apr. 18, 1983); *see* Exhibit A to Reply Brief of IRS and Treasury ("Reply Brief").

In addition, defendants have released factual background material contained in several documents, *see, e.g.,* Documents P28, P38, P48, and *in camera* review supports defendants' assertion of nonsegregability.

## 3. Search Affidavits

Plaintiff's third contention involves the adequacy of defendants' search procedure.

Plaintiff alleges that defendants failed to submit any affidavits detailing the scope of the search. Plaintiff's Opposition at 28.

This statement clearly is in error. Defendants submitted two affidavits in April 1983 describing the offices searched in response to plaintiff's FOIA request. Affidavit of David Mora (filed Apr. 18, 1983); Affidavit of Mary Hevener (filed Apr. 18, 1983). Defendants submitted additional affidavits with their Reply Brief. These new affidavits describe in more detail the search procedure. Exhibits A–B to Reply Brief.

 Agency affidavits detailing the method and scope of a search for documents must be sufficiently detailed for appropriate reliance by the Court. The standard, however, is not "meticulous documentation [of] the details of an epic search." *Perry v. Block,* 684 F.2d at 127. Rather, the agency need only provide affidavits explaining in "reasonable detail" the scope and method of the search, in absence of countervailing evidence. *Id.*

Defendants' affidavits reasonably describe the offices searched and the types of documents sought from each office. Plaintiff presents no countervailing evidence of an inadequate search, other than alleged inconsistencies between the *Vaughn* indices and IRS responses to requests for admissions. As outlined below, these allegations are either unsubstantiated assumptions or raise immaterial issues of fact.

## 4. Inconsistencies

Plaintiff contends lastly that defendants' motions for summary judgment should be denied because alleged inconsistencies between the *Vaughn* indices and IRS responses to requests for admissions raise substantive questions concerning the sufficiency of the identification and retrieval processes.

Defendant IRS specifically denied the existence of several types of documents in its answers to plaintiff's requests for admissions. Responses to Requests for Admis-

sions of Fact (filed July 8, 1983); *see supra* text at 542. Plaintiff argues that the titles, sources, and description of certain documents listed in defendants' *Vaughn* indices indicate that the denials by the IRS are false. Although not clearly stated, plaintiff apparently concludes that other documents must exist which defendants failed to retrieve or identify. Therefore, summary judgment should be denied and further discovery permitted to determine the existence of additional documents. *See* Plaintiff's Opposition at 6–18.

Plaintiff's argument as to the existence of inconsistencies, however, is not based on facts, but rather on assumptions and speculation that the *Vaughn* indices contain documents which the IRS denied existed.

Defendants submitted affidavits that documents containing technical or scientific information or an agency intent to increase revenues do not exist. Affidavit of John G. Schmalz (filed Apr. 18, 1983); Declaration of Peter Karpoff (attached to Defendants' Response to Plaintiff's Supplemental Memorandum in Opposition to Motion for Summary Judgment). *In camera* review of the questioned documents further supports the inadequacy of plaintiff's allegation of inconsistencies. None of the documents reviewed contained information which the IRS denied existed.

Even if some or all of the denied documents existed, the inconsistencies would be insufficient to raise a genuine issue of material fact. Defendants identified the documents retrieved and claimed exemptions. The possible existence of other documents does not necessarily place the retrieval and identification processes in issue. "The issue [is] not whether any further documents might conceivably exist but whether [the agencies'] search for responsive documents was adequate." *Goland v. Central Intelligence Agency*, 607 F.2d 339, 369 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (emphasis omitted). An agency need only conduct a "reasonable" search for documents and is not responsible for "reorganiz[ing] its filing system in response to each

FOIA request." *Id.* at 370; *Founding Church of Scientology of Washington, D.C., Inc. v. National Security Agency*, 610 F.2d at 837. The Court has ·found defendants' search affidavits to be sufficient proof of adequate retrieval procedures.

### B. *Section 6103*

Defendant IRS also claims exemption of five documents pursuant to 26 U.S.C. § 6103 (1980). All but one of the documents is covered under the deliberative process privilege of Exemption 5. *See* Document P62.

Defendant IRS claims that the documents contain taxpayer return information, which is protected from disclosure under section 6103. Motion by IRS for Summary Judgment at 10.

Section 6103 prohibits the disclosure of tax returns and return information except as specifically authorized by the statute. 26 U.S.C. § 6103(a). Return information is defined as, *inter alia*, a taxpayer's identity, information that a particular return is being examined, and any other information received, gathered, or developed during an audit or investigation. *Id.* at § 6103(b)(2). The statute does not authorize disclosure to plaintiff. *Id.*

The proper statutory construction of section 6103 has been debated in the courts. Although the decisions are not uniform, this Court has held that release of tax return information does not fall under FOIA, but is governed exclusively by section 6103. *Zale Corporation v. United States Internal Revenue Service*, 481 F.Supp. 486, 490 (D.D.C.1979) (Gesell, J.); but *c.f. Kanter v. Internal Revenue Service*, 433 F.Supp. 812, 824 n. 21 (N.D.Ill. 1977). Under the statute, the agency has the duty to determine what information falls under the exemption provisions. Thereafter, the requester of documents has the burden of showing that the agency's determination was arbitrary or capricious. *Zale Corporation v. United States Internal Revenue Service*, 481 F.Supp. at 490.

■ Plaintiff does not dispute the agency's determination that the five documents contain privileged tax return information. Plaintiff's challenges to the sufficiency of the identification and retrieval processes do not apply to section 6103.

■ The Court finds that defendants' have met their burden for summary judgment as to all requested documents. Plaintiff's arguments each standing alone fail to raise any substantive material questions of fact. Nor is the cumulative effect sufficient to deny defendants' motions for summary judgment.

The Court, therefore, grants the motions for summary judgment and denies the motions of plaintiff for further discovery and to amend the complaint.