**Charles E. PERRY, Appellant,**

v.

**John R. BLOCK, Secretary of Agriculture, et al.**

**No. 81–1330.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1982.

Decided July 30, 1982.

---

Sarah M. Vogel, Mandan, N.D., for appellant.

John H. E. Bayly, Jr., Asst. U. S. Atty., Washington, D. C., with whom Stanley S. Harris, U. S. Atty., and Royce C. Lamberth, Kenneth M. Raisler and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on brief, for appellees. Charles F. C. Ruff, U. S. Atty., at the time the case was filed, Washington, D. C., also entered an appearance for appellees.

Before TAMM and GINSBURG, Circuit Judges, and EDMUND L. PALMIERI,* United States Senior District Judge for the Southern District of New York.

Opinion PER CURIAM.

PER CURIAM:

This case comes to us on appeal of a district court decision that the federal appellees had, after some delay, released all documents responsive to appellant's Freedom of Information Act (FOIA) and Privacy Act requests for production. Appellant Charles E. Perry challenges Judge John Lewis Smith's summary disposition of the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

litigation in appellees' favor, arguing both that nonexempt, requested material remains undisclosed and that an action for damage lies under the Privacy Act as a result of the government's delayed and fitful responses to his document demands. Although it is manifest from the record that the government has been less than forthcoming in its dealings with Mr. Perry, we affirm the district court's rulings. The Privacy Act does not provide a claim for damages in the circumstances presented here, and the affidavits submitted by the government persuade us that all documents held by appellees and requested by Mr. Perry have now been released.

## I.

Appellant Perry is a North Dakota farmer who received from the Farmers Home Administration (FmHA) loans totaling roughly $150,000 between 1976 and 1978. Deficiencies in appellant's repayment practices in 1978 prompted the government in the following year to initiate a foreclosure action against the collateral Perry pledged with the FmHA. Appellant has contested the foreclosure proceedings and has made allegations of government wrongdoing in connection with the loans he received.[1] Indeed, even before the government filed the foreclosure action in North Dakota, Perry made in March of 1979 his initial request for the document he was subsequently to pursue for nearly two years. A little background will provide some flavor to this regrettable saga of carelessness and delay.

On March 15, 1979, Perry wrote to the National Director of the FmHA requesting (1) a complete copy of the working file assembled by FmHA officials and used by them to monitor the loans made him and (2) a copy of the investigative reports compiled in connection with those loans.[2] The FmHA claims, however, that it did not receive this letter until a copy of it was included with further correspondence sent by appellant to the Secretary of Agriculture on July 10, 1979.[3] On this July date, Perry wrote the Secretary and requested that the government provide the information sought in the earlier letter, a copy of which was appended.[4] The Secretary responded on July 30, 1979, acknowledging Perry's July 10 letter and stating that a formal response to the document request was in preparation.[5] By letter dated August 21, 1979, the Secretary apparently notified Perry that the records requested were in the possession of the United States Attorney for North Dakota and that inquiries should be directed to that official's office;[6] appellant denies, however, ever receiving this letter.[7]

This saga of allegedly crossed and lost correspondence involved as well a problem of roving files. The chief FmHA collection of files relating to and sought by appellant was held between January and May of 1979 by the Denver branch of the Office of General Counsel, Department of Agriculture. After mid-May of that year, these files were held by the United States Attorney in North Dakota, where they remained until after Perry filed the instant action.

In April of 1980, counsel for appellant again wrote the Secretary of Agriculture, demanding production under the FOIA and

---

1. Although appellant Perry's farm has now been sold pursuant to the foreclosure action, there remain pending against the government several counterclaims filed by Perry alleging misconduct by federal officials. Perry contends, for example, that the interest rate charged was usurious and that the government unlawfully accelerated the payment of the loans. *See* Brief for Appellant at xx-xxi. In a separate action Perry has also challenged the Farmers Home Administration (FmHA) foreclosure practices on constitutional grounds. *Id.* at xxi.

2. Brief for Appellant at iii.

3. Brief for Appellees at 2; Letter of April 22, 1980, from James E. Bryan, Jr., Freedom of Information Officer, FmHA, to A. James Barnes, Esq., Appendix (App.) at 20.

4. Brief for Appellant at iii-iv.

5. *Id.* at iv.

6. *See* Letter of August 21, 1979, from Bob Bergland, United States Secretary of Agriculture, to Charles E. Perry, App. at 21.

7. Brief for Appellant at iv.

the Privacy Act of the information sought in the initial letter of March 1979.[8] The FmHA's FOIA Officer responded by advising appellant that the information he sought was held by the North Dakota United States Attorney and suggesting that Perry contact the office of the federal prosecutor there.[9] On May 9, 1980, counsel for appellant lodged with the Executive Office for United States Attorneys a formal request for the documents based on the FOIA and the Privacy Act.[10] In early July, the Acting Director of that office denied the request, citing the law enforcement investigatory files exemption to the FOIA, 5 U.S.C. § 552(b)(7)(A) (1976).[11] Although not necessary in light of the Justice Department delays, Perry subsequently exhausted available administrative remedies in seeking the documents.

On June 16, 1980, Perry filed the instant action seeking production of the requested agency records and damages for the wrongful withholding of the information. The Department of Agriculture and the FmHA responded in late July with a motion to dismiss or for summary judgment on the ground that the documents in question were in the possession and control of the North Dakota United States Attorney. In their affidavits supporting the motion, the federal defendants suggested to the court that the requested materials could be examined by appellant in Bismarck, North Dakota, during normal working hours; this sanguine suggestion was, however, inconsistent with the Justice Department letter of July 2, 1980, claiming the protection of the investigatory files exemption for the very same material.[12]

Appellant's difficulties in obtaining the requested material continued. In a statement filed in the district court on September 16, 1980, the federal defendants argued that the relief sought by Mr. Perry had "long [ago] been accorded him," [13] apparently because a private investigator in the employ of Perry's counsel had viewed the requested materials.[14] In mid-October, however, the Department of Justice finally released over 400 pages of documents for inspection and copying by appellant.[15]

On December 10, 1980, the district court held a hearing on the government motion, at which representatives of the involved agencies argued that the litigation was moot in light of the October record release. Appellant submitted an affidavit alleging that a number of relevant, nonexempt documents had been improperly withheld by appellees. Although expressing skepticism at Perry's allegations, the district judge ordered appellees to undertake a further search for the "missing" documents. The search proved fruitful for Perry as an additional 160 pages of materials were released on January 9, 1981; [16] appellees, acknowledging a "mistake," claimed unawareness

---

**8.** Letter of April 8, 1980, from A. James Barnes, Esq., to Bob Bergland, United States Secretary of Agriculture, App. at 18–19.

**9.** Letter of April 22, 1980, from James E. Bryan, Jr., Freedom of Information Officer, FmHA, to A. James Barnes, Esq., App. at 20.

**10.** Letter of May 9, 1980, from A. James Barnes, Esq., to Director, Executive Office for United States Attorneys, United States Department of Justice, App. at 22–24.

**11.** Letter of 2 July 1980 from William P. Tyson, Acting Director, Executive Office for United States Attorneys, United States Department of Justice, to A. James Barnes, Esq., App. at 25.

**12.** *See supra* note 11 and accompanying text.

**13.** Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, *Perry v. Bergland*, No. 80–1487 (D.D.C. Jan. 22, 1981), App. at 28.

**14.** It appears that Mr. Perry's North Dakota counsel and a private investigator employed by that counsel did examine the files in question during 1980. *See* Brief for Appellees at 7; Brief for Appellant at xi. It is beyond peradventure, however, that a mere opportunity to inspect does not meet the disclosure responsibility imposed by the FOIA.

**15.** Brief for Appellees at 7; Brief for Appellant at xii.

**16.** *See* Brief for Appellees at 8. This additional material encompassed the North Dakota State FmHA file on Mr. Perry's account.

of the additional material.[17] On January 12, 1981, still more documents were released; investigatory papers prepared by agents of the Department of Agriculture's Office of Inspector General and relating to Perry's federal indebtedness were then disclosed.

The district judge conducted a second hearing on January 15, 1981. Appellees once again asserted that the Department of Agriculture possessed no other disclosable documents relating to appellant's request. Six days later, however, still more records were released.[18] Convinced that the federal defendants had at long last surrendered all of the requested documents, the district judge on January 22, 1981, granted the government's motion to dismiss or, in the alternative, for summary judgment. The trial judge also directed Perry's counsel to submit a request for reasonable attorneys' fees and costs. This appeal ensued.

## II.

■ Appellant posits a variety of challenges to the government actions in this case, only two of which merit discussion here. We would simply note at this juncture that, however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform. Although "[t]here may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention," *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir. 1978), the case at bar does not mandate such court action. Under 5 U.S.C. § 552(a)(4)(B), a federal court is authorized only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . . ." Thus, "[o]nce the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." *Crooker v. United States State Department*, 628 F.2d 9, 10 (D.C.Cir. 1980). We are not authorized to make advisory findings of legal significance on the character of the agency conduct vis-a-vis any requester of information. In sum, if we are convinced that appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.[19]

We turn now to the two arguments proffered by appellant that warrant limited discussion. First, arguing that relevant, nonexempt documents remain undisclosed, appellant contends that the affidavits submitted by appellees were insufficient to establish that the government search had been thorough and that all records had been released. Second, appellant contends that

17. *See* Brief for Appellees at 8. Appellees submit that the North Dakota State Office of the FmHA forwarded a duplicate copy of appellant's State file to the Washington FmHA office "without informing the National Office." *Id.* This "mistake," appellees contend, led to the belated disclosure of the nonexempt material. *Id.; see* Affidavit of Robert L. Nelson, Acting Freedom of Information Act Officer, FmHA, *Perry v. Bergland*, No. 80–1487 (D.D.C. Jan. 22, 1981) at 2, App. at 50.

18. On January 21, 1981, appellees released to Perry copies of records of meetings conducted by local FmHA officials in North Dakota, at which appellant's situation was discussed. *See* Brief for Appellees at 10; Brief for Appellant at xviii-xix.

19. We note that 5 U.S.C. § 552(a)(4)(F) (Supp. III 1979) directs the Merit Systems Protection Board's Special Counsel to initiate an investigation to determine whether disciplinary action is warranted in response to the improper withholding of nonexempt records under the FOIA by an agency officer or employee. Such an investigation is directed, however, only when the court in question (1) orders the production of the withheld records and (2) issues written findings suggesting that the "circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously . . . ." 5 U.S.C. § 552(a)(4)(F) (Supp. III 1979). While this process is arguably advisory in nature, the statutory language makes it clear that it is to be employed only when "the court orders the production of any agency records improperly withheld . . . ." *See Lovell v. Alderete*, 630 F.2d 428, 431 (5th Cir. 1980); *Emery v. Laise*, 421 F.Supp. 91, 92 (D.D.C.1976). No such order was, of course, issued in this case.

we should remand the case to the district court for a trial on his claim for damages under the Privacy Act.

## A. *The Adequacy of the Affidavits*

Since the district judge considered matters outside the pleadings in disposing of the litigation, we properly treat this case as one in which a motion for summary judgment was granted. *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir. 1977); *Gray v. Greyhound Lines, East,* 545 F.2d 169, 174 (D.C.Cir.1976); 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2713 at 391–92 (1973 & 1982 Supp.). We test the propriety of the grant of such a motion by the well-known standards of Fed. R.Civ.P. 56. In a FOIA case, as in all others in the federal system, " '[s]ummary judgment may be granted only if the moving party proves that no substantial and material facts are in dispute and that [movant] is entitled to judgment as a matter of law.' " *Founding Church of Scientology v. National Security Agency,* 610 F.2d 824, 836 (D.C.Cir.1979) (quoting *National Cable Television Association, Inc. v. FCC,* 479 F.2d 183, 186 (D.C.Cir.1973)).

█ To meet this exacting standard in a FOIA suit, the "defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *National Cable Television,* 479 F.2d at 186. The peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether the statutory obligations of the FOIA have been met. Accordingly, "in adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits, for these 'are equally trustworthy when they aver that all documents have been produced or are unidentifiable as when they aver that

identified documents are exempt.' " *Founding Church of Scientology,* 610 F.2d at 836 (quoting *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

Reliance on affidavits to demonstrate agency compliance with the mandate of the FOIA does not, however, require courts to accept glib government assertions of complete disclosure or retrieval. Rather, to ground a grant of summary judgment on the basis of agency protestations of compliance, the supporting affidavits "must be 'relatively detailed' and nonconclusory and must be submitted in good faith." *Goland,* 607 F.2d at 352 (footnote omitted) (quoting *Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C. Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)). Finally, as appellant argues, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Founding Church of Scientology,* 610 F.2d at 836 (footnote omitted). Perry submits that the adequacy of the federal retrieval process is genuinely at issue in this case. Specifically, appellant challenges the adequacy of the searches carried out by agency officials in response to his FOIA requests and the sufficiency of the descriptions of those searches.

Although the offhand treatment appellees accorded Perry was by any measure unfortunate, we agree with the district court that summary judgment in the government's favor was appropriate. Appellees submitted for the consideration of the trial judge three affidavits of federal officials describing the searches for records that transpired, albeit belatedly, in response to Perry's requests. In *Weisberg v. Department of Justice,* 627 F.2d 365, 371 (D.C.Cir. 1980), and in *Founding Church of Scientology,* 610 F.2d at 836–37, we stated that affidavits setting forth the record procurement efforts of an agency should provide some detailing of the scope of the examination conducted. We do not believe, however, that the district judge's ruling in the case at bar violated either the spirit or the letter of the *Weisberg* and *Founding Church of Scientology* decisions.

■ Appellant's challenge to the adequacy of the government affidavits is, we believe, based on a misreading of these FOIA precedents. Neither *Weisberg* nor *Founding Church of Scientology* demands in every FOIA case that the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records. Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA. In considering a challenge to an agency's retrieval procedures, a reviewing court must thus determine whether the materials submitted by the agency satisfactorily demonstrate the apparent adequacy of the search conducted. Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate. *See Exxon Corp. v. FTC*, 466 F.Supp. 1088, 1094 (D.D.C.1978), aff'd, 663 F.2d 120 (D.C.Cir.1980).

■ Scrutiny of the agency affidavits submitted in the instant case convinces us that appellees' search for the requested records, though belated, was reasonably complete and thorough. Two of the three government affiants identified with reasonable specificity the system of records searched and the geographic location of those files.[20] The third affiant, it is true,

simply concluded that no records relating to appellant remained undisclosed; his position as North Dakota Director of the FmHA, however, lends credence to the conclusion that he was referring solely to the files held at his North Dakota office and that the search he supervised encompassed only those files.[21] To be sure, the descriptions of the searches could have been more detailed, and we urge agency affiants and counsel to provide as much specificity as possible to facilitate intelligent assessment of the submitted information. The arguable inadequacy of the search descriptions here is, however, no more than marginal and does not render the grant of summary judgment inappropriate.

We would note, moreover, that we do not view the above summary of governing principles as at all inconsistent with our rulings in either *Weisberg* or *Founding Church of Scientology*. Both of those cases involved rather special facts that tended to cast considerable doubt on the adequacy of the respective agencies' searches; the existence of this doubt in each case rendered summary disposition inappropriate. In *Weisberg*, the agency's own assertions supported an inference that specifically identified material, solicited by the requester, might have remained in the agency's possession. 627 F.2d at 368–70. The appellant in *Weisberg* also adduced specific evidence tending to show that the search conducted for the records had been inadequate. *Id.* at 368–69. Similarly, in *Founding Church of Scientology* there were "well-defined requests and

**20.** Affiant Robert L. Nelson, the Acting Freedom of Information Act Officer at the FmHA, stated that he had participated in and assisted in the supervision of the search for records pertaining to Mr. Perry and that "all levels of FmHA, including the County, State, and National levels," had been searched. Affidavit of Robert L. Nelson, Acting Freedom of Information Act Officer, Farmers Home Administration, *Perry v. Bergland*, No. 80–1487 (D.D.C. Jan. 22, 1981) at 2, App. at 50. Affiant Earl W. Judy, an agent with the Agriculture Department's Office of Inspector General (OIG), stated that he personally had searched OIG's Washington files for information relating to appellant's request and that he had directed that a comparable search be made of OIG's Kansas City office. Affidavit of Earl W. Judy,

Special Agent, Office of Inspector General, United States Department of Agriculture, *Perry v. Bergland*, No. 80–1487 (D.D.C. Jan. 22, 1981) at 1–2, App. at 54–55.

**21.** Affiant Frederick S. Gengler, the North Dakota State Director of the FmHA, simply stated that, as a result of the transfer of all FmHA documents to those prosecuting the foreclosure action, his office no longer held any nondisclosed records relating to Mr. Perry. Affidavit of Frederick S. Gengler, State Director for North Dakota, Farmers Home Administration, United States Department of Agriculture, *Perry v. Bergland*, No. 80–1487 (D.D.C. Jan. 22, 1981) at 1–2, App. at 52–53.

positive indications of overlooked materials," 610 F.2d at 837, leading the court to conclude that "substantial doubts [existed] about the caliber of NSA's search endeavors." *Id.* at 834. Based on the conflicting evidence and nebulous records in *Weisberg* and *Founding Church of Scientology*, the court in each case ruled that a single, conclusory affidavit failed to negate any inference that requested information was irretrievable through the employment of reasonable search procedures.

Turning again to the case at bar, appellant's challenge of the district court's disposition of the retrieval question is based primarily on the cumulative effect of three alleged deficiencies in the government's behavior: appellant contends that the combined impact of (1) the vague descriptions of the searches conducted, (2) appellees' fitful responses to Perry's document requests, and (3) the fact that a belated release of materials rendered two of the government's affidavits "in error," [22] requires a remand for reconsideration of the adequacy of the government's search efforts. Neither the individual nor the cumulative effect of these alleged shortcomings requires reversal of the district court's decision, however.

We have noted above that the affidavits submitted by the government in this case, though perhaps somewhat summary, set forth with sufficient detail a reasonably thorough search for the requested information. *See supra* pp. 127–128. With regard to the second argument, it is clear that appellees' delayed reaction to appellant's document demands "evidences a lack of vigor, if not candor, in responding to [Perry's] FOIA requests." *Goland,* 607 F.2d 367, 370 (D.C.Cir.1979) (opinion on rehearing). In the final analysis, however, appellant offers only the unsupported allegation

that appellant's cumulative search efforts were insufficient as a matter of law to ground a ruling of summary judgment in the government's favor. Perry has presented no specific argument or evidence suggesting that solicited but undisclosed information remains in agency files. The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate. *See id.* at 369. Given the dearth of evidence presented by appellant suggesting the inadequacy of the retrieval process, we are unable to say that the district judge was incorrect in relying on the agency affidavits in question, even given the delays in document provision.

■ Perhaps most troublesome in gauging the adequacy of the agency's search is the fact that additional documents were found and released after affidavits were executed by federal officials stating that no further records responsive to appellant's request remained in agency control.[23] As we have had occasion to note before, "the discovery of additional documents is more probative that the search was not thorough than if no other documents were found to exist." *Id.* at 370. After considering all of the surrounding circumstances, however, we are convinced that the district judge's disposition of the case was proper. Over 600 pages of materials were released to appellant over the course of four months in late 1980 and early 1981; only ten pages of records were released *after* the execution of the affidavits alleged by appellant to be false, and the circumstances surrounding this delay indicate neither artifice nor subterfuge but rather, at worst, administrative inefficiency. *See* Brief for Appellant at 7–8; Brief for Appellees at 14 n.8.[24] While

---

22. Brief for Appellant at 7. On January 21, 1981, appellees released copies of county FmHA records responsive to appellant's FOIA request. *See supra* note 18. This belated release contradicted earlier representations made by affiant Robert L. Nelson, *see supra* note 20, and by affiant Frederick S. Gengler, *see supra* note 21, to the effect that no additional materials responsive to appellant's request remained in appellees' possession.

23. *See supra* note 22.

24. Appellees suggest that the release, after the execution of the Nelson and Gengler affidavits, of the county FmHA records "in no wise compromises the integrity or extent" of the document search, as these county records were "utterly non-responsive" to appellant's information request and were released "simply as a matter of courtesy." Brief for Appellees at 14 n.8. Even accepting appellant's characteriza-

we again recognize both the fitful nature of the government's release of records in this case and the probative impact of the discovery of additional documents, we find no error in the entry of summary judgment in appellees' favor.

In sum, after considerable study of the record, we are not convinced that sufficient "positive indications of overlooked materials" exist to warrant a remand of the case for a reconsideration of the substantive adequacy of the thoroughness of the search. *Founding Church of Scientology,* 610 F.2d at 837; *see generally Goland,* 607 F.2d at 367–72 (opinion on rehearing). Nor do we believe that the alleged deficiencies in the affidavit descriptions of that search require such a remand.

B. *The Claim for Damages Based on the Privacy Act*

■ Appellant claimed in the district court a right to "actual damages suffered as a result of the government's willful or intentional failure" to comply with the Privacy Act.[25] Although the contours of his claim are a bit difficult to discern, appellant apparently contends that the release by the agency appellees of inaccurate information regarding him, as well as the delayed surrender of that information, constituted violations of the Privacy Act giving rise to a claim for damages. As appellant notes, 5 U.S.C. §§ 552a(g)(1)(C) and (D) (1976) provide an individual with a cause of action against an agency that, *inter alia,* maintains inaccurate or incomplete records, the subsequent dissemination of which affects the individual adversely. But the United States is liable for damages for violations of subsections (C) and (D) only when the agency "acted in a manner which was intentional or willful ...." 5 U.S.C. § 552a(g)(4) (1976). *See, e.g., Parks v. IRS,* 618 F.2d 677, 683 (10th Cir. 1980); *Zeller v. United States,* 467 F.Supp. 487, 503 (E.D.N.Y.1979).

Appellant's Privacy Act claim must fail. As appellees note, no evidence submitted by

Perry suggests that the actions of the government in this case, however disjointed or confused, were willful or deliberate in the sense demanded by the Privacy Act. There is no demonstration whatsoever of any alleged inaccuracies in the records assembled and disseminated by appellees. Nor does anything in the record demonstrate the existence of any "adverse effect" on appellant following as a result of the supposed Privacy Act violations, as required by both subsections (C) and (D) of section 552a(g)(1). Although in certain cases a claim for damages for delayed release of covered information might lie under the Privacy Act, the record before us reveals only that requested documents were disclosed in a delayed fashion through administrative oversight. The district judge thus properly dismissed appellant's claim for damages under the Privacy Act.

III.

Although we affirm in all respects Judge Smith's resolution of appellant's action, we add this postscript to express our disapproval of the government's behavior vis-a-vis Mr. Perry. By counsel's own admission, the FmHA and the Justice Department acted in a "disjointed," "dilatory," and "fitful" fashion in processing appellant's requests for documents that, under the FOIA and Privacy Act, he had the undisputed right to inspect.[26] The laudable aims of the FOIA will pass beyond reach if federal agencies can through carelessness and procrastination frustrate the efforts of private citizens to gain access to government files. The vigilance with which agencies process information requests should be all the greater where, as here, an individual requests information that bears on his relations with the given agency. We regret the necessity for the long pursuit by Perry and his counsel of the documents at issue in this litigation, and we admonish the appellee agencies that a delay of two years in the release of information to which the requester has a right

tion of these records, however, we see no need to upset the trial court's decision.

**25.** *See* Brief for Appellant at 12–13.

**26.** Brief for Appellees at 11, 15.

of access is simply unacceptable as a matter of law, policy, and equity.[27]

*Affirmed.*

**27.** The district judge invited counsel for appellant to submit a request for reasonable attorneys' fees and costs in connection with the release of the records relating to Mr. Perry. At oral argument counsel for appellant stated that no such fees or costs had yet been awarded. It would now be appropriate for appellant's counsel to renew the matter before the district court.