John R. MASTER and John
H. Nix, Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION,
Defendant.

Civil Action No. 95–1755 (CRR).

United States District Court,
District of Columbia.

May 14, 1996.

Larry Klayman, Judicial Watch, Inc., Washington, DC, for Plaintiffs.

Cynthia A. Schnedar, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, Washington, DC, appeared on the briefs, for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court in the above-entitled case is the defendant's Motion for Summary Judgment. Also before the Court are the plaintiffs' Motion to Stay Consideration of the Defendant's Motion for Summary Judgment, Motion for Discovery, and Motion for *In Camera* Inspection of Documents Withheld by the Defendant. Upon careful consideration of the pleadings, the entire record herein, and the law applicable thereto, and for the reasons expressed below, the Court shall grant the defendant's Motion for Summary Judgment, and shall deny the plaintiffs' Motions for a Stay, for Discovery, and for an *In Camera* Inspection of Documents.

### BACKGROUND

This case concerns a request by the plaintiffs filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for documents and information in the defendant's possession or control concerning allegations of illegal wiretapping of the plaintiffs' phones by various individuals, including members of the City of Cleveland Police Department, and theft of Masters' bonds.

In late 1993, the plaintiffs requested that the defendant FBI's Cleveland Field Office ("Field Office") investigate the theft of bonds from Master. Thereafter, in April 1994, the plaintiffs requested that the Field Office investigate the illegal wiretapping of the plaintiffs' phones. In April of 1994, Special Agent Richard B. Hoke advised plaintiff Nix that he

believed that there was no evidence of illegal wiretapping. Plaints' Mot. to Stay at 1–2.

Nix then requested an investigation into the wiretapping from the Department of Justice's Office of Professional Responsibility ("OPR"), which investigates allegations of serious misconduct and/or criminal activity by FBI employees. On April 12, 1995, Nix received a letter from OPR, informing him that "OPR's inquiry into your allegation that your telephones were wiretapped has determined your concerns are without merit or basis in fact." *Id.* at 2, Exh. 1.

On December 5, 1994, the plaintiffs filed with the Field Office a FOIA request for access to the defendant's files "regarding the investigation into the theft of the bonds of John R. Master...." *Id.* at Exh. 3. The Field Office informed the plaintiffs that their written authorizations were necessary, and the appropriate authorizations were forwarded to the Field Office on May 12, 1995. *Id.* at Exh. 4. On May 23, 1995, the Field Office notified the plaintiffs that, although a search of their files revealed records responsive to the plaintiffs' request, the Cleveland Office had referred the request to the FBI headquarters ("Headquarters") in Washington, DC, to "insure all records at [Headquarters] and Cleveland, relative to this information are processed." *Id.* at Exh. 5. *Id.* On June 13, 1995, the Field Office further informed the plaintiffs that, due to the Headquarter's backlog of requests, the processing time for the request would be another 18 months to three years. *Id.* at Exh. 6.

By letter dated August 28, 1995, the Headquarters notified the plaintiffs that it had received their FOIA request from the Field Office and that approximately 4,650 pages are responsive to the plaintiffs' request. The letter requested an indication of the plaintiffs' willingness to pay the estimated duplication costs "so that further action can be taken on your request." *Id.* at Exh. 10.[1] The defendant located 1,689 pages responsive to the plaintiffs' FOIA request; it released 1,234 pages to the plaintiffs.

The plaintiffs commenced the present action on September 14, 1995, seeking an order granting the plaintiffs' immediate access to the records requested. On January 26, 1996, the plaintiff filed the instant Motion for Summary Judgment and, on February 14, 1996, filed its Vaughn Index. The plaintiff responded on March 21, 1996, filing the instant Motion to Stay Consideration of the Defendant's Motion for Summary Judgment, a Motion for Discovery, and a Motion for *In Camera* Inspection of Documents Withheld by the Defendant. The defendant filed an Opposition on April 11, 1996, and the plaintiffs filed their Reply on April 25, 1996.

In its motion, the defendant asserts that summary judgment is appropriate because it has released all nonexempt records responsive to the plaintiffs' FOIA request; because it has conducted an adequate search for those records; because it has properly withheld information under FOIA Exemptions 2 and 7(C); and because the plaintiffs' allegations of bad faith are without merit and irrelevant to this FOIA action. The plaintiffs oppose summary judgment, moving the Court for a stay of consideration of the defendant's motion for summary judgment, for discovery as to the adequacy of the defendant's search for responsive documents, and for an *in camera* inspection of all documents withheld by the defendant. The Court shall deny the plaintiffs' motions and shall rule that the defendant is entitled to judgment as a matter of law.

## DISCUSSION

 In a FOIA case, as in all others in the federal system, summary judgment may be granted only if the moving party establishes that no substantial and material facts are in issue and that the movant is entitled to judgment as a matter of law. *Perry v. Block,* 684 F.2d 121, 126 (D.C.Cir.1982); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91

---

1. The plaintiffs certified to this Court their willingness to pay the duplication costs for processing their FOIA request. However, the plaintiffs still owe duplication costs in the amount of

$114.10. *See* Third Kelso Decl. ¶ 21. The Court shall order that the plaintiffs pay this amount to the defendant promptly.

L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). To meet this standard in a FOIA suit, the defending agency must demonstrate beyond material doubt that it conducted a search reasonably calculated to uncover all relevant documents. *Nation Magazine v. United States Customs Serv.,* 71 F.3d 885, 890 (D.C.Cir.1995). The defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from the FOIA's inspection requirements. *Perry,* 684 F.2d at 126. To grant summary judgment on the basis of agency protestations of compliance, the supporting affidavits must be relatively detailed and nonconclusory and must be submitted in good faith. *Id.*

## I. THE DEFENDANT HAS CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE MATERIAL.

■ Under the FOIA, an agency has a duty to conduct a reasonable search for records responsive to an access request. *Oglesby v. Department of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990). An agency must show that it "made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Id.* The affidavits must be reasonably detailed, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched. *Nation Magazine,* 71 F.3d at 890.

■ In support of its motion for summary judgment, the defendant has supplied the declarations of FBI Special Agents W. Scott Brantley, Jr. and John M. Kelso, Jr. The Brantley Declaration specifically sets forth the procedures followed by the Cleveland Field Office in responding to the plaintiffs' FOIA request, including a description of the systems of records searched, an explanation of the FBI Central Records System files and how those files are accessed, and the results of the search of manual and automated indices of the Central Records System. *See* Brantley Decl.

In processing the plaintiffs' FOIA request, the defendant searched its general and automated indices to its central records system. Brantley Decl. ¶ 6. More specifically, in December 1994, both the defendant's manual and its automated indices were searched for the names "John R. Master" and "John H. Nix." *Id.* The defendant's search revealed one main investigative file [2] responsive to the request, numbered 196B–CV–49770, and eight cross-references, consisting of 1,689 pages. *Id.* at 5; Kelso Decl. ¶ 14. Furthermore, in January 1996, the central index system was again searched to assure that all records responsive to the plaintiffs' requests were located and processed. No additional records were located by this second search. Third Kelso Decl. ¶ 10.

In response to the declarations by the defendant, the plaintiffs challenge the adequacy of the search and claim that discovery is necessary to determine if the search indeed was adequate. The plaintiffs primarily base their challenge on two grounds.[3] The first is the existence of a numerical discrepancy in the page estimate of responsive documents given to the plaintiffs and in the number of pages actually disclosed to the plaintiffs. The second is the alleged withholding of a file identified in an FBI memorandum.

At the outset, the plaintiffs' challenges are based on their allegation that the defendant is not disclosing documents that it knows are responsive to the plaintiffs' request. As is

---

**2.** An individual's "main" investigative file means that the individual is the main subject of the file. An individual's "cross-reference" file means that the individual is mentioned or referenced in the body of a communication or record in the file, but that file concerns the investigation of another. *See* Brantley Decl. at 4.

**3.** The plaintiffs also allege that these two grounds constitute evidence of bad faith by the defendant.

The Court does not agree, as discussed in Part II, *infra.* The plaintiffs state also that the "Defendant has misstated facts on numerous occasion, failed to comply with this Court's orders, intentionally delayed the proceedings, and distorted key points in pleadings to this Court." These accusations are meritless and warrant no further discussion by the Court.

discussed in Part II, *infra*, this assertion is not persuasive. Moreover, this assertion is not particularly relevant to the adequacy of the defendant's search. That is, even if true, it does not raise doubts as to the *completeness* of the search conducted. *See Weisberg v. Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984) (in determining the adequacy of the search, the issue is not whether documents might exist that are responsive to the request but, rather, whether the search conducted by the agency was "adequate").

■ The plaintiffs also allege that "no search was made relative to Nix's FOIPA No. 400751." Plaints' Mot. to Stay at 11. As was explained by the defendant, the defendant initially had assigned two different request numbers (No. 400,749 and No. 400,-751)—one to each of the two plaintiffs. Once it was determined that all the material located during a search of the central records system regarding Nix was duplicative of the material located during the same search of Master, request number 400,751 was administratively closed. Thus, the Court finds that the plaintiffs' assertion that an inadequate search was made relative to request number 400,751 is meritless.

In sum, the plaintiffs contentions, while they may relate to whether the defendant is improperly withholding documents, fail to provide any support for the proposition that the defendant did not conduct a search reasonably calculated to uncover all relevant documents. The Court shall hold that the declarations provided in support of the adequacy of the defendant's search are nonconclusory, relatively detailed, and establish that the defendant performed an adequate search.

## II. THE DEFENDANT HAS RELEASED ALL NONEXEMPT RESPONSIVE MATERIAL.

■ In a letter to the plaintiffs' counsel, the defendant's Cleveland Field Office indicated that approximately 4,650 pages existed that were responsive to the plaintiffs' FOIA request. Only 1,234 pages ultimately were released to the plaintiffs. The plaintiffs assert that the numerical discrepancy between the number of documents the defendant initially indicated and the number of documents ultimately released demonstrates that the defendant is improperly withholding documents that are responsive to the plaintiffs' request. The Court has carefully reviewed the documents supporting the parties' motions and has concluded that no genuine issue of material fact exists on this issue. The numerical discrepancy resulted from clerical error, and not from fabrication on the part of the defendant.

Specifically, by way of the Brantley declaration, the defendant has explained that, when referring a FOIA request to FBI Headquarters, the routine practice of the FBI field Office is to send a communication advising the Headquarters of the referral. The communication, in this case, contained an approximation of the total pages contained in the file volumes referred, resulting from a quick and cursory page count at the Field Office. Brantley avers that the handwritten worksheets of the person who performed the page count indicated that the files contained a total of *1,545* pages. In transferring this number to the written communication to FBI headquarters, however, the number was mistakenly entered as *4,545* pages. The letter that was sent by the defendant to the plaintiffs' counsel indicated an estimate of 4,650 pages, which included the pages located at Headquarters that would be added to the estimate made in Cleveland.

The defendant's explanation of the numerical discrepancy is well-detailed and clear. Furthermore, that such a clerical error could occur is inherently believable, given the volume of FOIA requests processed by the agency.[4] More importantly, however, in the face of the defendant's explanation, the plaintiffs have pointed to nothing other than the existence of the numerical discrepancy itself to support their claim that the defendant's explanation of that discrepancy is a lie. The defendant can articulate nothing else to support its theory, nor can the Court discern anything from the record. The bare asser-

---

4. The defendants assert that last year the FBI processed over 2,900 FOIA requests, involving in excess of 501,000 pages. Brantley Decl. at 7.

tion by the plaintiff that the defendant is lying is insufficient to establish the existence of a genuine factual dispute as to the origin of the numerical discrepancy.

The plaintiffs next have alleged that the defendant has improperly withheld responsive documents based on a Memorandum dated May 2, 1994, from Special Agent Richard B. Hoke (the "Hoke Memorandum"), which is addressed to "194C–CV–xxxx" (the "X–File"). The Hoke Memorandum details a meeting between Special Agent Hoke, two attorneys, and the plaintiff Nix concerning the plaintiffs' allegations that they were illegally wiretapped. The plaintiffs claim that the X–File is responsive to their FOIA request and should be released.

According to the defendant, the X–File is a cross-reference identifiable with the plaintiff Master. While Master is mentioned in the X–File, the defendant asserts that the X–File relates to "corruption of state and local officials whose subjects are known to plaintiffs." Opp. to Mot. to Stay at 6. More specifically, the alleged illegal activities of the subjects were reported to the FBI by the plaintiffs' attorney. *Id.* The X–File was not considered a main investigative file concerning the plaintiffs and, thus, the plaintiffs were not indexed as subject or victims in the file. Nevertheless, the defendant alleges that it has already released 61 pages of the 68 pages in the X–File. Furthermore, the remaining documents are to be made available to the plaintiffs when they pay their duplication fees. Thus, contrary to the plaintiffs' assertions, it would appear to the Court that the defendant has identified all the material from the X–File.

As for the pages from the X–File that have been released and/or made available to the plaintiffs, the defendants have redacted certain portions pursuant to FOIA exemption 7(C). The plaintiffs argue that such redaction is improper.

■■■ Exemption 7(C) applies to information compiled for law enforcement purposes, the release of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To evaluate the propriety of the defendant's redaction based on Exemp-

tion 7(C), the court must balance the privacy interests involved against the public interest in disclosure. *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).

The defendant declares that the 7(C) Exemption relating to third parties was used here in four instances: to withhold specific information concerning its investigative activities to obtain collaborating evidence of the alleged theft by the X–File subject; to protect the identity of a third party in no way associated with the alleged fraud by wire, mail fraud, corruption of state and local officials, and interception of communications investigations; to protect an individual with a name similar to one of the X–File subjects; and to protect two individuals of investigative interest to the FBI in which the United States Attorney declined prosecution. The plaintiffs assert that the defendant may not rely on Exemption 7(C) because the defendant has redacted the names of the individuals "known to the plaintiffs," namely the two Cleveland police officers reported . by the plaintiffs to the defendant for illegal wiretapping.

■■■ " 'There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm.' ... Recognizing this danger, Exemption 7(C) 'affords broad[ ] privacy rights to suspects, witnesses, and investigators.' " *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1205 (D.C.Cir.1991); *Nation Magazine,* 71 F.3d at 896 (Exemption 7(C) "categorically exempt[s] from disclosure" the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations). An agency is permitted to withhold the names and addresses of private individuals unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Nation Magazine,* 71 F.3d at 896. Regardless of the plaintiffs' alleged personal knowledge of the identity of the X–Files subjects, the privacy interest in maintaining the confidentiality of their identi-

ty is substantial. Contrary to the assertions of the plaintiffs, there is no evidence here that the public knows whether the FBI actually investigated the two officers named by the plaintiffs.[5] *Cf. Nation Magazine,* 71 F.3d at 896 (subject of investigation not protected when subject himself made decision to bring information connecting himself with government efforts into the public domain).

In contrast, the public interest in disclosure of the X–File's subjects is insubstantial. This information is not probative of the defendant's behavior or performance. *Safe-Card,* 926 F.2d at 1205. Furthermore, the plaintiffs have not pointed to "compelling evidence" that the defendant FBI is engaged in illegal activity. *See Nation Magazine,* 71 F.3d at 896. Thus, the Court shall hold that the defendant properly relies on Exemption 7(C).

## CONCLUSION

Based on the foregoing, the Court shall grant the defendant's Motion for Summary Judgment and shall deny the plaintiffs' Motions for a Stay, for Discovery, and for an *In Camera* inspection of Documents. Consistent with the foregoing Memorandum Opinion, the Court shall enter an order of even date herewith.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 14th day of May, 1996,

ORDERED that the defendant's Motion for Summary Judgment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the plaintiffs' Motion for a Stay shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the plaintiffs' Motion for Discovery shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the plaintiffs' Motion for an *In Camera* Inspection of Documents shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that the plaintiffs shall pay the costs of duplicating the released material responsive to their FOIA request in the amount of $114.10 within 30 days of the date of this Order; and it is

FURTHER ORDERED that any and all other outstanding motions in the above-captioned case shall be, and hereby are, declared MOOT.

---

**5.** The plaintiffs assert that there is "public knowledge of [the police officers'] involvement in the wiretapping." The plaintiffs refer to Exhibits 2 and 3 of their Reply to the Defendant's Opposition as evidence of this public knowledge. Exhibit 2 is the Hoke Memorandum, which details a meeting between Special Agent Hoke and the plaintiff Nix and his attorneys, at which the plaintiff alleges he was illegally wiretapped by one of the officers. Hoke states that the allega- tions "did not merit further investigation." Exhibit 3 is an affidavit of Nix's attorney, concerning various civil actions filed against members of the Cleveland Police Department and the attorney's personal knowledge of his client's dealings with the FBI. Nowhere, can the Court find evidence that the public knows whether the FBI actually investigated the two particular police officers identified by the plaintiffs.