Marjorie GALLACE, Plaintiff,

v.

**U.S. DEPARTMENT OF AGRICULTURE,**
Defendant.

**No. CIV.A. 01–1218 RMC.**

United States District Court, District of Columbia.

Jan. 17, 2003.

Majorie Gallace, Camden, ME, Pro se.

Thomas Patrick Hester, Jr., Benjamin N. Bedrick, U.S. Department of Justice, Joo Y. Chung, U.S. Department of Justice, Office of Information and Privacy, Washington, DC, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Currently before the Court are the U.S. Department of Agriculture's ("USDA")

Motion for Summary Judgment, Ms. Marjorie Gallace's Opposition Brief, and USDA's Reply Brief. The underlying matter involves Ms. Gallace's request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for USDA records "dated from January 1, 1993, to the May 3, 1993, [Cooperative Research and Development Agreement] between Delta & Pine Land and Agricultural Research Service." Defendant's Ex. A. Dissatisfied with the documents she received from USDA and the scope of USDA's efforts to locate additional responsive documents, Ms. Gallace filed a lawsuit in this Court to obtain a broader search. Upon consideration of the parties' submissions and the entire record, the Court will grant USDA's Motion for Summary Judgment in part and deny it in part.

## I. BACKGROUND

Ms. Gallace's FOIA request arose out of her disagreement with a seed-sterilization project conducted by the Agricultural Research Service ("ARS") and a private company, Delta & Pine Land ("D & PL").[1] After conducting a spirited correspondence with various government officials in 1999 and 2000, on September 2, 2000, she submitted "a formal request for records (letters, memorandums, minutes of meetings) dated from January 1, 1993, to the May 3, 1993, CRADA between Delta & Pine Land and Agricultural Research Service." *Id.* The "CRADA" referred to a Cooperative Research and Development Agreement between ARS and D & PL, the purpose of which was to develop infertile cotton seed as a varietal protection device.

In response to Ms. Gallace's September 2, 2000, request for records, USDA's FOIA Officer initiated a search for responsive records. First, the FOIA Officer recognized that she had previously gathered materials relating to the CRADA for other FOIA requesters; she located and reviewed those documents from her own office files. Next, she consulted with Dr. Melvin Oliver, the Cropping Systems Research Laboratory scientist who was involved in the development of cotton seed sterilization research and who served as the Authorized Departmental Officer's Designated Representative on the project. Dr. Oliver had been responsible for the administration and supervision of the CRADA. Dr. Oliver suggested that she also contact the offices of two other ARS employees: Dr. Norma Trolinder, a former ARS scientist who was involved in seed sterilization research, and Dr. Jerry Quisenberry, the former Laboratory Director.

The FOIA Officer sent written memoranda and Ms. Gallace's letter to Drs. Oliver and Quisenberry, asking them to search for responsive documents and notifying them of the documents already located in her office. Dr. Oliver responded by telephone that he could not find any additional responsive documents. Dr. Quisenberry sent back a fax with the message, "Dr. Oliver will have all the information." Defendant's Motion for Summary Judgment, Declaration of Valerie Herberger ("1st Herberger Decl."), ¶ 9 and Ex. D. In addition, the FOIA Officer consulted with Dr. Trolinder's former assistant and learned that Dr. Trolinder had resigned from ARS in September of 1994 and that all of her files had been destroyed sometime around May of 1999, when her former department moved to a new building and it was determined that her files were no longer needed.

---

1. The Complaint explains, "I grow much of my own food, selecting and savings [sic] seeds as people have done since agriculture began.... It's hard to believe that anyone would even think of terminating this age-old practice, beneficial to all and essential to the poor, but some did." Complaint ¶ 1.

The FOIA Officer also forwarded a copy of Ms. Gallace's request and the list of located documents to Ms. Diana Blalock, the current Technology Licensing Coordinator in the Office of Technology Transfer ("OTT") who has responsibility for negotiating licenses for inventions and preparing the license agreements. On September 25, 2000, Ms. Blalock responded by telephone that she had searched her files, as well as the files of Dr. D.E. Zimmer, a Technology Transfer Coordinator, and Mr. Randy Deck, a Patent Advisor, and had found no additional responsive documents.

Thereafter, by letter dated October 10, 2000, ARS released to Ms. Gallace thirty-one pages of responsive records without excision. Another nine pages were released, from which ARS redacted certain information under Exemption 4 of FOIA, which pertains to "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."[2] 5 U.S.C. § 552(b)(4). In its cover letter, ARS told Ms. Gallace that searches were performed by the Authorized Departmental Officer's Designated Representative ("ADODR") and by the Patent Licensing Specialist in the OTT. ARS also indicated that "[n]o minutes were taken at meetings held[;] therefore, no documents exist in the files maintained by the ADODR or OTT." 1st Herberger Decl. ¶ 13; Defendant's Ex. E.

Dissatisfied with this response, Ms. Gallace appealed on October 16, 2000, because the responsive records did not include minutes of meetings or notes taken at meetings held between ARS and D & PL. By memorandum dated October 23, 2000, the FOIA Officer requested again that Dr.

Oliver and Ms. Blalock search their files; each responded on October 24th that they had found no responsive documents. Dr. Oliver did forward three documents that he had used in preparation for 1992 presentations to D & PL employees concerning seed sterilization, but the FOIA Officer determined that these documents were outside the time period listed in Ms. Gallace's FOIA request.

In addition, the FOIA Officer contacted Willard J. Phelps, the Authorized Departmental Officer who has authority to enter into, administer, and terminate CRADAs. Since he was not involved in initial contacts or detailed negotiations, Mr. Phelps reported that he had no notes or minutes of meetings pertaining to the CRADA.

Therefore, in a November 9, 2000, letter to Mrs. Gallace, the ARS Administrator affirmed USDA's initial action on her FOIA request and told her that no more meeting minutes or notes from meetings, dated within the time period specified in her request, could be located relating to the CRADA.

Ms. Gallace initiated this lawsuit on June 4, 2001, requesting an order to require USDA to disclose the names of current and former employees who attended meetings and held discussions with D & PL and to search their files for notes of meetings and discussions leading to the CRADA. In addition, Ms. Gallace seeks an order requiring USDA to release all such documents and to pay for the cost of this lawsuit.

By letter dated August 23, 2001, ARS wrote to Ms. Gallace in an effort to resolve this case. It thereby released the three

---

**2.** Ms. Gallace has expressly stated that she has no interest in obtaining the redacted information. *See* Plaintiff's Response to Defendant's Statement of Material Facts ¶ 10. In addition, the FOIA Officer removed a 34–page amended CRADA signed in 1997 from the documents sent to Ms. Gallace because it was outside the time period covered by her request. Ms. Gallace has also expressly stated that she has no interest in obtaining a copy of this document. *See* Plaintiff's Response ¶ 9.

1992 documents that Dr. Oliver had located, which had initially been determined to be outside the scope of Ms. Gallace's FOIA request. ARS also further detailed the scope of its search and agreed to make available the 1997 amendment to the CRADA, which was also outside the scope of Ms. Gallace's FOIA request. By letter dated September 7, 2001, ARS provided an even more detailed description of its search and verified that there were no responsive records dated before January 1, 1993, other than those that had already been released to Ms. Gallace.

## II. STANDARD OF REVIEW

Summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, it is a way to provide " 'the just, speedy and inexpensive determination of every action.' " *Id.* (quoting Fed.R.Civ.P. 1). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there that is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 322, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c). Material facts are those facts which, under the relevant substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original). A genuine issue of material fact does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If this burden is met, then the nonmoving party must present specific evidence that a material factual dispute exists. The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable and justifiable inferences in its favor. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

An agency moving for summary judgment in a FOIA case "must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *See Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983). The adequacy of the search is judged by a reasonableness standard. *See McGehee v. CIA,* 697 F.2d 1095, 1100–01 (D.C.Cir.1983). To demonstrate the adequacy of its search, an agency must provide the court with "affidavits of responsible agency officials which are relatively detailed, nonconclusory, and submitted in good faith." *Greenberg v. United States Dep't of Treasury,* 10 F.Supp.2d 3, 12–13 (D.D.C.1998). However, "a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986).

Where all nonexempt material responsive to a request has been released, there is no improper withholding, and hence an essential prerequisite to granting a FOIA plaintiff's prayer for relief is missing. *See Tijerina v. Walters,* 821 F.2d 789, 799 (D.C.Cir.1987) ("[I]f we are convinced [defendant has] ... released all nonexempt material, we have no further judicial func-

tion to perform under the FOIA." (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C.Cir. 1982))). On the other hand, the court clearly has authority under FOIA to order an agency to produce documents where the records sought have been improperly withheld. *See* 5 U.S.C. § 552(a)(4)(B); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).

## III. ANALYSIS

Government agencies have an obligation under FOIA to conduct a reasonable and adequate search to locate and produce documents to requesters, so long as the documents are not exempt from disclosure under the terms of the statute. In its motion, USDA argues that summary judgment is proper because there is no genuine issue that USDA performed such a search in response to Ms. Gallace's FOIA request. Ms. Gallace, in rebuttal, raises three objections to the reasonableness and adequacy of USDA's search.

First, Ms. Gallace argues that USDA incorrectly limited the subject matter of its search by looking for documents relating to the CRADA instead of those relating to the broader topic of seed sterilization.[3] The first sentence of Ms. Gallace's request, however, specifically references the CRADA between D & PL and ARS and makes no mention of any other topic, including seed sterilization.[4] To ignore her reference to the CRADA would be to find that she wanted *every* record in USDA's possession, within her requested time period, with no limit as to subject matter.[5] This would not be a reasonable interpretation of her request and would be unduly burdensome on USDA.

In addition, the relief requested by Ms. Gallace in her Complaint speaks to the fact that she sought records relating to the CRADA in her FOIA request. Ms. Gallace's Complaint asks the Court, in part, for an order requiring USDA to disclose the names of employees who attended meetings and had discussions with D & PL "leading to the [CRADA]" and to search the files of those employees for notes of meetings and discussions with D & PL "leading to the CRADA[.]" Complaint ¶¶ 16–17.

At best, Ms. Gallace's FOIA request may be considered vague and poorly worded. "Faced with such a request, an agency may construe the request as it reasonably sees fit, as long as it informs the requester of the defined scope of the request." *Hamilton Securities Group Inc. v. HUD*, 106 F.Supp.2d 23, 33 (D.D.C. 2000). USDA's letter to Ms. Gallace on October 10, 2002, specifically stated that it was responding to her request for records "relating to the CRADA[.]" Defendant's Ex. E.

■ Most importantly, Ms. Gallace did not challenge USDA's interpretation of her request in her administrative appeal. In that appeal, Ms. Gallace asked only that the FOIA Officer be required to search the files of ARS personnel who attended meet-

---

**3.** In her Opposition Brief, Ms. Gallace claimed that she "sought information on how seed-sterilization was initiated and approved at USDA [and that n]othing in [her] requests shows [she] sought information only about the CRADA." Plaintiff's Opposition Brief at 1.

**4.** Ms. Gallace mentions seed sterilization in the next paragraph of her letter, but that reference relates to her request for expedited processing. The fact that she wanted to in-

form the public about seed sterilization is not inconsistent with her request for documents relating only to the CRADA.

**5.** Deleting Ms. Gallace's reference to the CRADA would cause her request to read, "This letter is a formal request under the Freedom of Information Act for records (letters, memorandums, minutes of meetings) dated from January 1, 1993, to [] May 3, 1993."

ings between D & PL and ARS. Because Ms. Gallace did not raise the issue of USDA's interpretation of her FOIA request in her administrative appeal, review in this Court is barred. *See Dettmann v. United States Dep't of Justice,* 802 F.2d 1472, 1477 (D.C.Cir.1986) ("[A] plaintiff may have exhausted administrative remedies with respect to one aspect of a FOIA request—and thus properly seek judicial review regarding that request—and yet not have exhausted her remedies with respect to another aspect of a FOIA request."); *Hamilton Securities Group Inc.,* 106 F.Supp.2d. at 26–27.

■ In her second objection, Ms. Gallace argues that ARS' search for responsive documents was inadequate because (1) USDA did not produce documents relating to a meeting in August of 1992 discussing seed sterilization, (2) USDA did not produce documents relating to the CRE–LOX system, and (3) USDA did not search offices that she claims are "likely to contain records." Plaintiff's Opposition Brief at 3.

■ The three 1992 documents that Ms. Gallace received after filing her lawsuit indicate that Dr. Trolinder had a meeting relating to seed sterilization with a D & PL employee in August of 1992, but no record of this meeting was released. ARS has fully explained, however, that Dr. Trolinder is no longer employed by the agency and that her records were destroyed in May of 1999, when her former department moved to another location. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991). Moreover, Ms. Gallace's FOIA request seeks records dated from January 1, 1993, to May 3, 1993, after this meeting oc-

curred. Any records created at, or in preparation for, this meeting—even assuming they exist—are not within the time period described in Ms. Gallace's FOIA request and, therefore, USDA was not required to produce them.

Ms. Gallace argues that USDA was required to produce documents relating to a system of seed sterilization called the CRE–LOX system, which the 1992 documents indicate was discussed at the August 1992 meeting. As the FOIA Officer points out in her declaration, however, the CRE–LOX system deals with "produc[ing] male steriles for use in a hybrid system [and] by itself has no effect on seed development or germination[,]" rendering this subject matter outside the scope of Ms. Gallace's FOIA request, in addition to being outside of Ms. Gallace's requested time frame.[6] Defendant's Reply Brief, Second Declaration of Valerie Herberger ("2nd Herberger Decl."), ¶ 7.

Ms. Gallace also urges the Court to require USDA to search its offices in Athens, Georgia, and Washington, D.C., based on indications found in released documents that those offices may contain responsive documents. There may be a small kernel of a problem here with USDA's search. "An agency has discretion to conduct a standard search in response to a general request, but it must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during its inquiry." *Campbell v. United States Dep't of Justice,* 164 F.3d 20, 28 (D.C.Cir.1998). Further, "[i]t is well settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia–Lucena*

---

6. As USDA notes, "If plaintiff now is interested in records concerning the CRE–LOX system, she can simply make a new request to the ARS for them." Defendant's Reply Brief at 13.

*v. United States Coast Guard,* 180 F.3d 321, 327 (D.C.Cir.1999).

Ms. Gallace contends that USDA should have searched its Athens office because two documents show that USDA employee Dave Zimmer in Athens was involved in negotiating the CRADA with D & PL.[7] However, the FOIA Officer reported that Ms. Blalock had already searched the files of Dr. D.E. Zimmer and found no responsive documents. *See* 1st Herberger Decl. ¶ 12.

Similarly, Ms. Gallace contends that USDA should have searched offices in Washington, D.C., after finding a memorandum dated February 17, 1993, from Mr. Phelps to W.H. Tallent, J.W. Radin, and P.A. Tippett. Notes on this memorandum stated, "Plowmen approved the CRADA per Tallent," and "Telecom–Radin approves[.]" Plaintiff's Opposition Brief at 3. According to the FOIA Officer's second declaration, OTT had already searched both Mr. Phelps' and Mr. Tallent's files in connection with the three prior FOIA requests relating to the CRADA and found no responsive documents.[8] *See* 2nd Herberger Decl. ¶ 5. There is no indication, however, that the FOIA Officer searched the offices of Mr. Radin or Mr. Tippett, people who held at least one responsive document—the memorandum in question—in February of 1993. Under *Campbell* and *Valencia–Lucena,* these leads must be pursued before a fully adequate search can be said to have occurred.

■ In her third objection to the search, Ms. Gallace challenges the adequacy of ARS' description of its search. To the contrary, the agency provided affidavits of a responsible agency official that are "relatively detailed, nonconclusory, and submitted in good faith." *Greenberg v. United States Dep't of Treasury,* 10 F.Supp.2d 3, 12–13 (D.D.C.1998). Nothing more is required. The affidavits need not "set forth with meticulous documentation the details of an epic search for the requested records." *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982). The FOIA Officer's declarations show in detail her process for searching for responsive documents, including how she determined which files needed to be searched, whose files were actually searched and by whom, and what criteria were used when searching. After reviewing the FOIA Officer's declarations, the Court finds that ARS' description of its search was adequate.

## IV. CONCLUSION

For these reasons, the Court will grant USDA's Motion for Summary Judgment in part and deny it in part. Following the Court's Order, the only remaining genuine issue of material fact will be whether it was reasonable and adequate for USDA not to search Mr. Radin's or Mr. Tippett's offices for responsive records. A separate Order will accompany this Memorandum Opinion.

## ORDER

For the reasons stated in the Memorandum Opinion that accompanies this Order, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is DENIED as to the

---

7. Ms. Gallace cites a March 19, 1993, letter from William Arnold of D & PL to Mr. Zimmer transmitting a marked-up draft of the CRADA and an undated memo from Mr. Zimmer to Willard Phelps, a USDA employee, stating that "... we will continue our negotiations with D & PL." Plaintiff's Opposition Brief at 3.

8. The Court finds that the three prior FOIA requests, listed in a footnote in the FOIA Officer's second declaration, were broad enough to cover any document requested by Ms. Gallace.

issue of whether it was reasonable and adequate for USDA not to search Mr. Radin's or Mr. Tippett's offices for responsive records; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED as to all other issues.

SO ORDERED.