**ARTHUR ANDERSEN & CO.**

v.

**INTERNAL REVENUE SERVICE,**
Appellant.

No. 81–1821.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 25, 1982.

Decided May 21, 1982.

Murray S. Horwitz, Atty., Dept. of Justice, with whom John F. Murray, Acting Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, Michael L. Paup and Richard W. Perkins, Attys., Dept. of Justice, Washington, D. C., were on the brief, for appellant.

Eric J. Lobenfeld, New York City, for appellee.

Before WRIGHT and WALD, Circuit Judges, and CELEBREZZE,* Senior Circuit Judge for the Sixth Circuit.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

█ In this appeal, the Internal Revenue Service ("Agency" or "IRS") challenges the district court's judgment that the Freedom of Information Act ("FOIA")[1] requires disclosure of drafts of Revenue Ruling 77–284[2] and accompanying Background Information Notes. Following *in camera* inspection of the documents under procedures stipulated to by the parties,[3] the court held that the "record" contained insufficient evi-

dence to establish the exempt status of these documents. *Arthur Andersen, Inc. v. IRS*, 514 F.Supp. 1173, 1177 (D.D.C.1981). The IRS contends that the drafts showed on their face that they fell within 5 U.S.C. § 552(b)(5) ("Exemption 5") which makes FOIA inapplicable to information "normally privileged in the civil discovery context," *NLRB v. Sears*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). Privileged information includes "inter- and intra-agency communications that are part of a deliberative process preceding the adoption and promulgation of an agency policy." *Jordan v. Department of Justice*, 591 F.2d 753, 772 (D.C.Cir.1978) (en banc). While we agree with the district court that in the usual FOIA case the government's submissions in support of its exemption claim would be inadequate under our prior rulings, we hold that in the unique procedural context of this case, the government's showing was sufficient to establish the exempt status of these drafts.

## I. BACKGROUND

On March 5, 1979, Arthur Andersen & Co., a national public accounting firm, requested of the IRS, pursuant to FOIA and IRS public disclosure rules,[4] "a copy of the Internal Revenue Service file on Revenue Ruling 77–284" and "a copy of any background file documents as defined in Section 301.6110–2(g) related to Revenue Ruling 77–284."[5] On July 20, 1979, the IRS noti-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. (a) Each agency shall make available to the public information as follows:
   * * * * * *
   (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—
   * * * * * *
   (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register[.]
   5 U.S.C. § 552(a)(2)(B).

2. 1977–2 C.B. 97.

3. Joint Appendix ("J.A.") at 12.

4. IRS public disclosure regulations, Treas. Reg. § 301.6110 (1977), are promulgated under 26 U.S.C. § 6110 which establishes procedures for public access, with exceptions, to "the text of any written determination and any background file document relating to such written determination." 26 U.S.C. § 6110(a).

5. J.A. at 42.
   (g) *Background file document—*(1) *General rule.* A "background file document" is—
   (i) *The request for a written determination,*
   (ii) Any written material submitted in support of such request by the person by whom or on whose behalf the request for a written determination was made,
   (iii) Any written communication, or memorandum of a meeting, telephone communica-

fied Andersen that certain documents in the file would be released but that others were exempt from FOIA disclosure requirements.[6] Following an unsuccessful administrative appeal,[7] Andersen filed a complaint in the district court on March 19, 1980.[8]

On June 11, 1980, the parties signed a stipulation covering all but one of the withheld documents. The parties agreed to submit the documents to the court for *in camera* inspection and to each file "position papers" setting forth its case for disclosure or exemption and a reply to the other party's position paper.[9] Andersen further agreed not to pursue discovery and to be bound by the determination of the district court based on these submissions.[10] The court approved the stipulation two days la-

ter.[11] The sole document not covered by the stipulation, a general counsel memorandum ("GCM") describing "the reaction of the Office of Chief Counsel to the proposed revenue ruling," [12] was not included in the stipulation because the parties intended either to settle with regard to the document or to file cross-motions for summary judgment, depending upon whether the IRS decided to appeal another district court decision that ordered disclosure of a GCM, *Taxation With Representation Fund, Inc. v. IRS*, 485 F.Supp. 263 (D.D.C.1980). When the IRS appealed,[13] Andersen moved for summary judgment with respect to the GCM at issue in this case [14] and filed supporting papers, including copies of sworn statements of IRS employees that had been submitted in the *Taxation With Represen-*

tion, or other contact, between employees of the Internal Revenue Service or Office of its Chief Counsel and persons outside the Internal Revenue Service in connection with such request or written determination which is received prior to the issuance (as such term is defined in paragraph (h) of this section) of the written determination, but not including communications described in paragraph (g)(2) of this section, and

(iv) Any subsequent communication between the National Office and a district director concerning the factual circumstances underlying the request for a technical advice memorandum, or concerning a request by the district director for reconsideration by the National Office of a proposed technical advice memorandum.

(2) *Limitations.* Notwithstanding paragraph (g)(1) of this section, a "background file document" shall not include any—

(i) Communication between the Department of Justice and the Internal Revenue Service or the Office of its Chief Counsel relating to any pending civil or criminal case or investigation,

(ii) Communication between Internal Revenue Service employees and employees of the Office of its Chief Counsel,

(iii) Internal memorandum or attorney work product prepared by the Internal Revenue Service or Office of its Chief Counsel which relates to the development of the conclusion of the Internal Revenue Service in a written determination, including, with respect to a technical advice memorandum, the Transmittal Memorandum, as defined in § 601.105(b)(5)(vi)(c) of this chapter,

(iv) Correspondence or any portion of correspondence between the Internal Revenue Service and any person relating solely to the

making of or extent of deletions pursuant to section 6110(c), or a request pursuant to section 6110(g)(3) and (4) for postponement of the time at which a written determination is made open or subject to inspection,

(v) Material relating to (A) a request for a ruling or determination letter that is withdrawn prior to issuance thereof or that the Internal Revenue Service declines to answer, (B) a request for technical advice that the National Office declines to answer, or (C) the appeal of a taxpayer from the decision of a district director not to seek technical advice, or

(vi) Response to a request for technical advice which the district director declines to adopt, and the district director's request for reconsideration thereof.

Treas. Reg. § 301.6110–2(g).

**6.** J.A. at 43.

**7.** J.A. at 46–53.

**8.** J.A. at 4.

**9.** J.A. at 12–13.

**10.** J.A. at 13.

**11.** J.A. at 14.

**12.** Affidavit of J. Howard at ¶ 4 (Nov. 17, 1980), J.A. at 110, 111.

**13.** The district court's decision was affirmed. *Taxation With Representation Fund v. IRS*, 646 F.2d 666 (D.C.Cir.1981).

**14.** J.A. at 60.

*tation* suit.[15] The Agency cross-moved for summary judgment[16] and submitted the GCM for *in camera* inspection.[17] On May 21, 1981, the district court issued a single opinion, which covered the documents subject to the stipulation as well as the GCM, and ordered disclosure of them all. *Arthur Andersen, Inc. v. IRS, supra,* 514 F.Supp. at 1178. On June 29, 1981, the court denied the Agency's Motion for Reconsideration[18] and this appeal followed. The government challenges only that portion of the district court's decision requiring disclosure of the drafts of the Revenue Ruling and accompanying background notes, which it contends are predecisional and deliberative and thus protected by Exemption 5.

## II. ANALYSIS

■■■ Exemption 5 permits an agency to withhold documents that "would not normally be discoverable by a private party in the course of civil litigation with the agency." *Jordan v. Department of Justice, supra,* 591 F.2d at 772. "Congress intended that agencies should not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of the FOIA." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). Among those privileges protected by Exemption 5 is the "executive 'deliberative process' privilege," *id.,* which is "unique to the government." *Id.* at 866. This privilege covers " 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be.' " *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 153, 95 S.Ct. at 1517 (quoting Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761, 797 (1967)). "The point, plainly made in the Senate Report, is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public; and that the

'decisions' and 'policies formulated' would be the poorer as a result." *Id.* at 150, 95 S.Ct. at 1516 (quoting S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965)). However, because the quality of a decision is unlikely to be "affected by communications with respect to the decision occurring after the decision is finally reached," *id.* at 151, 95 S.Ct. at 1516, forced disclosure of post-decisional communications is unlikely to affect the quality of the decision, "as long as prior communications and the ingredients of the decisionmaking process are not disclosed." *Id.* Further "*[p]redecisional* documents are thought generally to reflect the agency 'give-and-take' leading up to a decision that is characteristic of the deliberative process; whereas *post-decisional* documents often represent the agency's position on an issue, or explain such a position, and thus may constitute the 'working law' of an agency" which Congress intended by FOIA to make accessible to the public. *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 677 (D.C.Cir.1981). Thus, in general, predecisional communications are likely to qualify as privileged and "communications made after the decision and designed to explain it" are not. *NLRB v. Sears, supra,* 421 U.S. at 151–52, 95 S.Ct. at 1516–17.

■■■ In *Coastal States, supra,* 617 F.2d at 866, this court cited "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" as examples of predecisional deliberative materials privileged under Exemption 5. The designation of the documents here as "drafts" does not end the inquiry, however. *Coastal States* forecloses the Agency's argument that any document identified as a "draft" is *per se* exempt. Even if a document is a "draft of what will become a final document," the court must also ascertain

15. J.A. at 73, 78, 99.

16. J.A. at 109.

17. J.A. at 107.

18. J.A. at 167.

"whether the document is deliberative in nature." *Id.* Further, "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.*

■ FOIA imposes on the Agency the burden "to sustain its action" in withholding documents. 5 U.S.C. § 552(a)(4)(B). The Agency must thus carry the burden of establishing that documents contain "the ideas and theories which go into the making of the law" and not "the law itself," *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 708 (D.C.Cir.1971). This involves showing "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States, supra,* 617 F.2d at 868. To establish that documents do not constitute the "working law" of the agency, the agency must present to the court the "function and significance of the document[s] in the agency's decisionmaking process," *Taxation With Representation, supra,* 646 F.2d at 678, "the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s]," *id.* at 679, and the positions in the chain of command of the parties to the documents. *Id.* at 681.

The procedures by which an agency must ordinarily make such a showing were defined in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). "[T]o allow the courts to determine the validity of the government's claims without physically examining each document," *Coastal States, supra,* 617 F.2d at 861, *Vaughn* required that claims of exemption be supported with specific explanations. The concern in *Vaughn* was that unassisted court examination might be prohibitively burdensome. "In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization." *Vaughn, supra,* 484 F.2d at 825. But particularly where many docu-

ments are involved, "it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case." *Id.* Because the party seeking disclosure is ignorant of the contents of withheld documents and a court may be unable to undertake an exhaustive *in camera* review, *Vaughn* required that an agency justify withholding of documents through itemized and indexed explanations. Otherwise, the burden of justification would be imposed on the court. As *Vaughn* explained,

> [t]he burden has been placed specifically by statute on the Government. Yet under existing procedures, the Government claims all it need do to fulfill its burden is to aver that the factual nature of the information is such that it falls under one of the exemptions. At this point the opposing party is comparatively helpless to controvert this characterization. If justice is to be done and the Government's characterization adequately tested, the burden now falls on the court system to make its own investigation. This is clearly not what Congress had in mind.

484 F.2d at 825–26.

■ Here, however, the district court voluntarily assumed, through approval of the stipulation, the obligation of determining from the documents themselves and the "position papers" whether the documents were exempt. Further, the judge had accepted materials submitted by both parties in connection with their summary judgment motions on the GCM, and these were included in the record which she had before her. Because, in addition to approving the stipulation, she considered all the documents together and rested her decision with respect to the drafts on the "record" evidence, *Arthur Andersen, Inc. v. IRS, supra,* 514 F.Supp. at 1177, the issue before us is not whether the Agency satisfied the obligation imposed by *Vaughn* to specifically explain its position but whether the record evidence shows that the documents were part of a

predecisional deliberative process. *See Coastal States, supra,* 617 F.2d at 869. We hold that materials submitted by Andersen on the GCM together with the drafts themselves do so show.

The deliberative process from which a proposed revenue ruling emerges is described in the affidavit of Jerome Sebastian of the IRS Office of Chief Counsel,[19] dated July 3, 1979, which explains the "function and significance" of drafts:

> The legal review by the Office of Chief Counsel, as embodied in the GCM, is only one of several levels of review involved in the consideration of the proposed determination, which generally originates in a division of the Office of the Assistant Commissioner (Technical). After a Technical employee prepares a draft of the proposed determination, it is reviewed at the Branch, and possibly the Division and Assistant Commissioner levels in Technical. Depending on the importance, complexity or sensitivity of the issue involved, the proposed determination may, but will not necessarily, be referred to higher review levels within the Service, or to the Interpretative Division, Office of Chief Counsel for legal review.

*In camera* review of the documents supports this description of the process. On their face there appear the number, identities and titles of the various persons in successively higher positions to whom the drafts were submitted for "approval" and the alterations these persons made in the text of the background note and revenue ruling. Thus, the flow of the documents was from subordinate to superior. Because approval was required at each higher level, all the participants up to the Commissioner were without authority to make a final determination. The Sebastian affidavit's description of the process complements the documents to adequately (albeit barely) establish their predecisional and deliberative nature. A comparison of the successive drafts with each other and with the final revenue ruling reveals no policy or reasons explained in these drafts that were not contained in the ruling ultimately published. The inference we draw from this is that these documents could not and do not serve as agency "working law," providing substantive guidance in future decisions. Andersen offers no evidence to the contrary. This contrasts markedly with the documents ordered released in *Taxation With Representation, supra,* 646 F.2d at 682, which (as revealed through discovery) were indexed, compiled, and consulted as sources of agency law by IRS employees. In this case, there is neither evidence nor a logical inference to be drawn from the documents that they would be so consulted. Nor, in foregoing discovery, can plaintiffs impose on the IRS the obligation to account for the ultimate disposition and use of the disputed documents. It is enough in the context of this case that the uncontradicted evidence shows the documents to be predecisional and deliberative, and thus eligible for Exemption 5 treatment. *Cf. Pies v. IRS,* 668 F.2d 1350, 1354 (D.C.Cir.1981) (draft proposed regulations and memoranda exempt under Exemption 5); *Falcone v. IRS,* 479 F.Supp. 985, 989 (E.D.Mich.1979) (draft revenue rulings and Staff Comment sheet protected by "privilege for deliberative process materials").

The case is remanded to the district court with directions to enter judgment for the defendants.[20]

19. J.A. at 73, 74.

20. Andersen does not urge on appeal that, even if FOIA is inapplicable, disclosure is required by the Internal Revenue Code of 1954, 26 U.S.C. § 6110(a), and regulations, Treas. Reg. § 301.6110 (1977), presumably because the documents here at issue appear outside the definition of a "background file document." *See* note 3 *supra.*