UNITED STATES of America, Plaintiff,

v.

PHILIP MORRIS USA INC., f/k/a Philip Morris Inc., et al., Defendants.

Civ.A. No. 99–2496(GK).

United States District Court, District of Columbia.

Nov. 12, 2003.

Peter D. Keisler, Assistant Attorney General, Sharon Y. Eubanks, Director, Stephen Dudley Brody, Deputy Director, David S. Klontz, Jennifer R. Taylor, Meredith D. Burrell, U.S. Department of Justice, Washington, DC, for Plaintiff.

Alfred McDonnell, Arnold & Porter, Denver, CO, Amy L. McGinnis, Amy Elizabeth Ralph, Anne McBride Walker, Brian K. Esser, Duane J. Mauney, Floyd E. Boone, Jr., James Miller Rosenthal, Jeanna Maria Beck, Jonathan Louis Stern, Kendall Millard, Kevin M. Green, Leslie Wharton, Melissa L. Marglous, Michael R. Geske, Murray R. Garnick, Nick Malhotra, Peter Thomas Grossi, Jr., Ryan David Guilds, Sharma Jnatel Simmons, Sharon L. Taylor, Stacy J. Pollock, Susan Louise Lyndrup, Arnold & Porter, Robert M. Rader, Thomas M. Stimson, Timothy M. Broas, Winston & Strawn LLP, Geoffrey T. Wright, Jonathan Redgrave, Patrick L. Hubbard, Paul Sommer Ryerson, Peter John Biersteker, Robert Francis McDermott, Jr., Karen O'Brien Hourigan, Jones Day, John Buchanan Williams, William M. Bailey, Collier, Shannon, Scott, PLLC, Andrew Martin McCormack, King & Spalding, David Mendelson, David Sullivan, Dawn D. Marchant, Jason Beckerman, Karen McCartan DeSantis, William Charles Hendricks, III, Kenneth N. Bass, Kirkland & Ellis, LLP, Rebecca I. Ruby, Goodwin Procter, LLP, Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Fred W. Reinke, Clifford Chance US, LLP, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Arnon D. Siegel, Lawrence Saul Robbins, Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck & Untereiner, William Salvatore D'Amico, Chadbourne & Parke,

Bruce G. Merritt, Judah Best, Kevin C. Lombardi, Steven Klugman, Debevoise & Plimpton, Clausen Jr. Ely, James Alexander Goold, Joseph A. Kresse, Keith Allen Teel, Covington & Burling, Washington, DC, Ashley Cummings, Dan H. Willoughby, Leign Ann Dowden, King & Spalding, Atlanta, GA, Ben M. Germana, Herbert M. Wachtell, Jeffrey M. Wintner, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, C. Ian Anderson, Davis, Polk & Wardwell, James Lewis Brochin, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, Lauren J. Bernstein, Winston & Strawn, Harold K. Gordon, Jones, Day, Reavis & Pogue, Aaron H. Marks, Daniel R. Benson, Julie R. Fischer, Leonard A. Feiwus, Marc E. Kasowitz, Nancy E. Straub, Kasowitz, Benson, Torres Friedman, L.L.P., Demetra Frawley, Mary Elizabeth McGarry, Michael V. Corrigan, Simpson, Thacher & Bartlett, Bruce G. Sheffler, David L. Wallace, F. John Nyhan, Garyowen P. Morrisroe, Jessica L. Zellner, Timothy M. Hughes, Lawrence Edward Savell, Chadbouren & Parke, LLP, David Runtz, Dennis H. Hranitzky, Joseph P. Moodhe, Steven S. Michaels, Debevoise & Plimpton (NY), New York City, Bradley E. Lerman, Dan K. Webb, Elizabeth D. Jensen, Jeffrey Wagner, Kevin J. Narko, Luke A. Palese, Ricardo E. Ugarte, Winston & Strawn, David M. Bernick, Deirdre A. Fox, Douglas G. Smith, Michelle H. Browdy, Stephen R. Patton, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, Cindy L. Gantnier, Erik D. Nadolink, Jason T. Jacoby, Patricia M. Schwarzschild, Richard H. Burton, Hunton & Williams, Richmond, VA, Daniel C. Jordan, Hunton & Williams, McLean, VA, Seth Barrett Tillman, U.S. District Court for the Middle District of Alabama, Montgomery, AL, David B. Alden, Paul Crist, Randal S. Baringer, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, Elizabeth P. Kessler, Ivan C. Smith, Scott C. Walker, Jones, Day, Reavis & Pogue, Columbus, OH, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston–Salem, NC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA., Minneapolis, MN, Paul Lamont McDonald, Philadelphia, PA, Bruce D. Ryder, J. William Newbold, James M. Cox, Michael B. Minton, Richard Paul Cassetta, Thompson Coburn, LLP, St. Louis, MO, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, for Defendants.

#### Memorandum Opinion

KESSLER, District Judge.

### I. INTRODUCTION

On July 15, 2003, the Special Master issued Report and Recommendation # 123 ("R & R # 123") recommending that the Court grant in part and deny in part Joint Defendants'[1] First Motion to Compel Certain Documents Listed on Plaintiff's Executive Office of the President and Presidential Records Act Privilege Logs ("Motion to Compel"). Upon consideration of R & R # 123, the Government's Partial Objection, Joint Defendants' Opposition, the entire record herein, and for the reasons set forth below, the Court (1) **adopts in part** and **remands in part** R & R # 123, and (2) **sustains in part** and **overrules in part** the Government's Partial Objection.

### II. BACKGROUND

In their Motion to Compel, Joint Defendants seek 122 documents. The Government asserts that all of them are protected by the deliberative process privilege.[2] As described more fully below, in order for the privilege to apply, a document must be both "pre-decisional" and "deliberative." As to several

---

**1.** Joint Defendants are Philip Morris USA Inc. (f/k/a Philip Morris Incorporated), R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to the American Tobacco Company), Lorillard Tobacco Company, Altria Group Inc. (f/k/a Philip Morris Companies, Inc.), British American Tobacco (Investments), Ltd., The Council for Tobacco Research–U.S.A., Inc., and The Tobacco Institute, Inc.

**2.** The Government also asserts the presidential communications privilege as to six of the documents. R & R # 123 at 28. The Special Master recommended that the Court sustain the privilege claim for these documents. *Id.* at 34. The Joint Defendants do not object to this recommendation and R & R # 123 is adopted in this respect.

documents, the Special Master found that the Government failed to establish one or the other of these elements and he therefore recommended that they be released, in whole or in part. As to other documents which he did find privileged, he recommended release on the ground that the Joint Defendants' need for them outweighs the Government's privilege.[3]

## III. ANALYSIS

### A. The Deliberative Process Privilege

■ The deliberative process privilege allows the government to withhold "confidential intra-agency advisory opinions disclosure of which would be injurious to the consultative functions of government." *Taxation With Representation Fund v. Internal Revenue Service,* 646 F.2d 666, 677 (D.C.Cir.1981)(internal quotation omitted).[4] These materials are typically "recommendations, draft documents, proposals [and] suggestions." *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980). The Government bears the burden of establishing the applicability of the privilege. *Id.* at 861.

#### 1. Policy Purposes Served by the Privilege

The deliberative process privilege serves several important public policy purposes. *See Coastal States,* 617 F.2d at 866. It assures that subordinates within an agency will not be chilled from giving their uninhibited opinions and recommendations out of fear that they will later be subject to public criticism or ridicule. *Id.* In this way, the privilege fosters "creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions." *Russell v. Department of the Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982)(internal quotation omitted).

The privilege also helps prevent the "premature disclosure of proposed policies." *Coastal States,* 617 F.2d at 866. Finally, it "protect[s] against confusing issues and misleading the public," which could result if documents were disseminated that suggested "reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Id.* (citation omitted).

#### 2. Requirements for Application of the Privilege

■ Despite the important policy considerations that underlie the deliberative process privilege, the courts have held that it "should be construed as narrowly as consistent with efficient Government operation." *Taxation With Representation Fund,* 646 F.2d at 677 (quoting *EPA v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)). Just as it is important to protect agency decisionmaking, "the courts have recognized a strong public interest in the disclosure of reasons that *do* supply the basis for an agency policy actually adopted." *Id.* at 678 (emphasis added). Therefore, the courts have been careful to apply the privilege only where its central purpose, "to prevent injury to the quality of agency decisions," *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 152, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), is truly served.

■ To protect both agency decisionmaking and the public interest in disclosure, the courts have articulated two basic requirements for assertion of the privilege. First, in order to be protected, a document must be "predecisional," meaning that "it was generated before the adoption of an agency policy." *Coastal States,* 617 F.2d at 866. Since post-decisional documents "often represent the agency's final position on an issue, or explain such a position" *Taxation With Rep-*

---

**3.** The Special Master also recommended that the Court permit the Government to withhold certain other documents because the Joint Defendants' need does *not* outweigh the privilege. Joint Defendants do not object to this recommendation and R & R # 123 is adopted in this respect.

**4.** The privilege is typically encountered in the context of cases involving the Freedom of Infor-

mation Act ("FOIA"), as it was in *Taxation With Representation Fund.* Materials protected by certain common law privileges, including the deliberative process privilege, are exempt, under 5 U.S.C. § 552(b)(5), from FOIA's disclosure requirements. *Taxation With Representation Fund,* 646 F.2d at 677.

*resentation Fund,* 646 F.2d at 677, the quality of agency decisionmaking is unlikely to be harmed by disclosure of communications that explain the basis for a decision that has already been reached "as long as prior communications and the ingredients of the decisionmaking process are not disclosed." *Sears,* 421 U.S. at 151, 95 S.Ct. 1504.

In this R & R, the Special Master recommended that some of the challenged documents be released on the ground that they are post-decisional, not pre-decisional. For example, he recommended release of page 2304 of Challenge Document ("CD") # 60 [5] because it appears to "state the final position of the Administration" and also "appears to have been created to explain a decision already made." R & R # 123 at 105. Similarly, he recommended release of pages 2244–2252 of CD # 62 [6] because they compare a bill with " 'the administration's position' on certain issues," and provide the rationale for that position. R & R # 123 at 60.

The Government objects to these recommendations, as well as others based on the Special Master's finding that the documents are post-decisional.[7] As to CD # 60, the Government asserts that the Special Master mis-identified the "operative 'decision' for purposes of deciding whether the document [constituted] pre-decisional deliberations." Gov't App. 3. As to CD # 62, the Government insists that the document does not explain the Administration's position. The Court has considered the Government's arguments as to all the documents found by the Special Master to be post-decisional and finds them lacking in merit. Consequently, R & R # 123 is adopted with respect to all such documents.

■ Second, in order to be protected, a document must also be "deliberative," meaning that "it reflects the give-and-take of the consultative process." *Coastal States,* 617 F.2d at 866. Deliberative material tends to be advisory and to "contain opinion rather than mere fact." *Brinton v. Department of State,* 636 F.2d 600, 604 (D.C.Cir.1980).[8] The Special Master recommended that portions of some of the challenged documents be released on the ground that they do not contain deliberative material. For example, he recommended release of pages 2735–2737 of CD # 72 [9] because "these pages contain administrative, and not deliberative, exchanges among agency employees." R & R # 123 at 48. Similarly, he recommended release of pages 0179–0181 of CD # 123 [10] because

**5.** This document is an e-mail from Bruce Long, Deputy Associate Director, Veterans Administration ("VA"), Health/Personnel, Office of Management and Budget ("OMB"), to Toni Hustead, Chief, Veterans Affairs Branch, Health/Personnel, OMB. The e-mail "forwards two emails and an attached draft question and answer paper relating to tobacco-related VA compensation claims and VA savings estimates." R & R # 123 at 105.

**6.** This document consists of an email from William G. White, Program Examiner, Health/Personnel, OMB, to Jill Blickstein, Program Examiner, Director's Office, "transmitting a draft detailed section-by-section summary of [certain tobacco] legislation" and emails among Cynthia Rice, Special Assistant to the President for Domestic Policy, Joshua Gotbaum, Executive Associate Director, OMB and Richard Turman, Chief, Health Programs and Services, Health/Personnel, OMB, discussing who within the EOP could use the document. R & R # 123 at 59.

**7.** The Government's document-specific objections are set forth in its Appendix 3.

**8.** However, even though "agency communications containing purely factual material are generally not protected," if "disclosure of even purely factual material would reveal an agency's decision-making process" the material may be withheld. *Russell v. Department of the Air Force,* 682 F.2d 1045, 1048 (D.C.Cir.1982).

**9.** CD # 72 "contains a group of emails ... distributed among White House and OMB officials and employees discussing an attached draft document prepared by Mr. Locke entitled 'Points Regarding CBO Analysis of the [Proposed] June [1997] Tobacco Settlement.' " R & R # 123 at 48. The Special Master recommended that the privilege be sustained as to pages 2730–2732 because "these pages contain Mr. Locke's subjective analysis of the CBO Analysis."

**10.** CD # 123 contains e-mails "concerning a proposed notification by the Secretary of [Health and Human Services] to states that are not in compliance with" a certain tobacco regulation. R & R # 123 at 95. The Special Master recommended that the privilege be sustained for page 0178 as "this page contains questions from an agency official regarding a legislative proposal." *Id.* at 95.

these pages "contain only nondeliberative communications among agency employees." *Id.* at 95. As to these documents, and others found non-deliberative, the Government disputes the Special Master's findings. Gov't App. 3. Again, the Court has considered the Government's arguments and finds them lacking in merit. R & R # 123 is therefore adopted with respect to documents found to be not deliberative.

### B. Loss of the Privilege through Formal and Informal Adoption

■ A document that is initially pre-decisional "can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866; Jan. 2, 2003 Mem. Op. at 4. As the Supreme Court explained in *Sears*, an agency employee is unlikely to be chilled by the fear that her advice will become public if it is adopted. 421 U.S. at 161, 95 S.Ct. 1504. The Court reasoned that agency employees will be "encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency." *Id.* Moreover, as already noted, the public has a significant interest "in knowing the reasons for a policy actually adopted by an agency." *Id.*

■ The Government therefore has the burden of establishing that a purportedly privileged document has not been adopted formally or informally. Jan. 2, 2003 Mem. Op. at 4. At issue in R & R # 123 is the meaning of "informal adoption" and the extent of the Government's burden in demonstrating that it has not lost the privilege by virtue of such informal adoption.[11]

### C. The Special Master's Standard for Informal Adoption

Although there are many cases addressing the deliberative process privilege, few, if any, deal with the specific issue of adoption. Neither the Supreme Court nor the Court of Appeals for the D.C. Circuit has yet defined "informal adoption" or explicitly distinguished it from express adoption. In the absence of a definition in the case law, the Special Master attempted to craft a definition of "informal adoption" that he believed to be consistent with *Sears* and *Coastal States*.

In the Special Master's view, "informal adoption simply can result from the express use of [a] recommendation by the agency or where the deliberations reflect announced agency policy." R & R # 123 at 10. Based on this standard he concluded, after *in camera* review, that the Government failed to establish that certain challenged documents were not informally adopted. For example, the Government's declaration as to CD # 29 [12] was insufficient because it "[did] not state whether the document reflects the Administration's policy." *Id.* at 80–81. The Government argues strenuously that this standard has no basis in the law of this jurisdiction, is overly broad, and impossible to satisfy.

### D. The Special Master's Standard Must be Rejected

The Special Master's standard for "informal adoption" of agency documents must be rejected for two related reasons. First, the proposed standard is not supported by the caselaw. Second, as a practical matter, the standard is too indefinite to apply.

#### 1. The Standard Has No Basis in Existing Caselaw

The Special Master's standard simply has no basis in the existing caselaw, which is

---

**11.** It is undisputed that none of the Challenged Documents was formally adopted.

**12.** CD # 29 consists of emails and "an attachment (a) from Jill Blickstein to a large group of OMB officials transmitting and requesting review of and edits on a draft response to a question posed by the Senate Budget Committee about the Administration's plan to reduce teen smoking and (b) from Richard Turman to Anne Tumlinson, [Program Examiner, Health/Personnel, OMB], Hugh Connelly, [Deputy Chief, Budget Analysis Branch, Budget Analysis and Systems, Budget Review, OMB], Mark Miller, [Chief, Health Financing, Health/Personnel, OMB], and Patrick Locke, forwarding (a) and informing them as to the plan for completing preparation and review of the draft response." R & R # 123 at 80.

**318**

especially voluminous in this Circuit, relating to the deliberative process privilege. The phrase "reflect announced agency policy" is not drawn from any case[13] and appears to have much broader application than "informal adoption" has heretofore had in this jurisdiction. Neither the Supreme Court nor this Circuit has ever required disclosure of agency documents which were merely "used" by a decisionmaker or "reflect[ed] announced agency policy," on the basis that they had been informally adopted.

In fact, the Special Master's standard is a significant departure from the caselaw and would require release of pre-decisional documents even where such release would undercut the purposes of the deliberative process privilege. For example, with regard to draft documents in particular, the Special Master recommended their release simply because the Government had failed to indicate how the drafts differ from related final documents.[14] However, if an agency must compare each draft document to its corresponding final decision, the agency would, in effect, be required to pinpoint a final decision (or decisions) relating to each draft document, if such exists. The Supreme Court has clearly stated that the Government's assertion of the deliberative process privilege does not depend on its ability "to identify a specific decision in connection with which a memorandum is prepared." *Sears*, 421 U.S. at 153 n. 18, 95 S.Ct. 1504; *Access Reports v. Department of Justice*, 926 F.2d 1192, 1196 (D.C.Cir.1991). ("Any requirement of a specific decision *after* the creation of the document would defeat the purpose" of the privilege)(emphasis in original).

Nor is it clear what public policy would be served by such comparison. As the Second Circuit has explained:

> If the [draft language] appeared in the final version, it is already on the public record and need not be disclosed. If [it] did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so.

*Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 86 (2d Cir.1979). *See also Chemical Weapons Working Group v. United States Environmental Protection Agency*, 185 F.R.D. 1, 4 (D.D.C.1999)("Release of draft revisions now would inevitably enable parties to learn which preliminary ideas and findings the Agency had accepted, which it had refined, and which it had rejected").

## 2. The Standard Is Too Indefinite to be Applied

■ The Special Master has stated that informal adoption can be found when there is "express use" by an agency of a recommendation or where agency deliberations "reflect" final agency policy. R & R # 123 at 10. What does "express use" mean and how does it differ from express adoption? Whatever the phrase was intended to encompass, the Government is correct that it is not required to demonstrate as to each challenged document that it was not "used" by a decisionmaker. Gov't Mem. at 9. Mere "use" of pre-decisional, advisory materials does not amount to adoption of those materials. *Renegotiation Board v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 189, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975)(agency may with-

---

**13.** In *Taxation With Representation Fund,* the Court of Appeals did require the IRS to disclose memoranda which had been revised so as to *"reflect* the agency's current position on a given issue." 646 F.2d at 683. (emphasis added). However, those documents had clearly been " 'adopted' " in the sense that they "function[ed] as the 'working law' of the agency." *Id.* The Special Master's standard is explicitly intended to capture more than agency "working law". *See* R & R # 123 at 12. In addition, as discussed below, the OMB documents at issue here can not meaningfully be analyzed within the "working law" framework.

**14.** *See* R & R # 123 at 82–83 (privilege should be overruled as to draft document because the Government's declarant "does not indicate whether the substance of the document accurately reflects the Administration's public policy, or whether these particular memoranda were [disseminated] in the same form, a similar form, or not at all."); *id.* at 75 (privilege should be overruled because the Government's declaration "does not answer the question of whether the draft letter became final ... if it was, it would no longer qualify for the deliberative process privilege as it would no longer be considered pre-decisional.").

hold reports that were "created for purposes of discussion" and used for that purpose).[15]

As noted, the Special Master also defined informal adoption to include materials that "reflect announced agency policy." Again, how can it be determined with any specificity whether a pre-decisional document "reflects" agency policy? Defendants were unable, when asked at oral argument, to state what the Government would have to do to satisfy the Special Master's standard.[16] For its part, the Government is understandably concerned that "reflect" could be construed to mean something like "resemble" or "relate to."[17] Because all "[p]re-decisional materials ... will resemble, at least to some extent, final decisions," Gov't Mem. at 8, imposition of a requirement that a challenged document not resemble or relate to a final agency decision or policy would essentially swallow the deliberative process privilege.[18]

For these reasons, the Court concludes that the Special Master's standard for informal adoption contained in R & R # 123 is incorrect as a matter of law.

### E. Role of Agency "Working Law"

#### 1. Informal Adoption Cases Have Turned on Whether Documents Function as Agency "Working Law"

■ Those cases that do address agency adoption of predecisional documents focus on one central theme. Are those documents operating or being used as agency "secret law" or "working law"; if so, they must be

disclosed. Documents that serve as agency working law have been defined as "interpretations of established policy on which the agency relies in discharging its regulatory responsibilities." *Tax Analysts v. IRS*, 294 F.3d 71, 81 (D.C.Cir.2002).

*Coastal States* illustrates the kind of "working law" that does not enjoy deliberative process protection. In that case, the Department of Energy was ordered to disclose advisory memoranda issued by the Department's regional counsel. Since the memoranda were not formal, published interpretations of statutes or regulations, the Court of Appeals ruled they were not formally adopted. 617 F.2d at 860. However, the reason they were deemed agency "working law" and therefore disclosable was that they were "routinely used by agency staff as guidance ... and were retained and referred to as precedent." *Id.* at 869.

The courts have consistently held that the purposes of the deliberative process privilege are not served by permitting agencies to withhold documents that function as working law. "[T]here is nothing premature or misleading about disclosing statements of an agency's legal positions." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C.Cir.1997). Indeed, the public has a "vital interest[ ]" in knowing what the law is. *Sears*, 421 U.S. at 156, 95 S.Ct. 1504. Where agency personnel rely on materials as established policy in discharging their regulatory responsibilities, "withholding them would serve no legitimate

**15.** The fact that a final report reaches the same conclusion as a pre-decisional report is not sufficient to demonstrate adoption. *Renegotiation Board*, 421 U.S. at 189, 95 S.Ct. 1491.

**16.** In their Opposition, Joint Defendants reiterate that the Government must demonstrate that each document has not been adopted, formally or informally, but do not discuss how to determine whether a document has been informally adopted. *See* Joint Defs' Opp'n at 28 ("Once the analysis or recommendation in an otherwise pre-decisional document has been adopted or incorporated into a final agency policy or decision—*regardless of how you define or characterize 'adoption' or 'incorporation'*—it becomes part of that final decision")(emphasis added).

**17.** Dictionary definitions of "reflect" demonstrate the elasticity of the word. *See e.g.*, AMERI-CAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE

(4TH ed). (defining reflect as "v. tr. 1. To throw or bend back ... from a surface ...2. To give back or show an image of (an object); mirror. 3. To make apparent; express or manifest... 4. To bring as a consequence ... v. intr. 1. To be bent or thrown back ... 2. To give something back, as light or sound .. 3. To give evidence of the characteristics or quantities of someone of something ... ").

**18.** The term "reflect" is particularly expansive as used by the Special Master. He would require the Government to demonstrate not only that a challenged *document* was not informally adopted but also that any *policy* "articulated in the document" does not "reflect" final agency policy. R & R # 123 at 70.

policy interest of the government." *Coastal States,* 617 F.2d at 869.

■ Courts have used a variety of factors to "determin[e] whether a document in fact constitutes the 'working law' of an agency." *Taxation With Representation Fund,* 646 F.2d at 678. Any analysis must begin with consideration of "the function and significance of the document in the agency's decisionmaking process." *Id.*

Of particular relevance is evidence that agency staff itself is treating the document as precedential guidance. *Taxation With Representation Fund,* for example, involved certain General Counsel Memoranda ("GCM"s) that were "retained by the Office of Chief Counsel [of the IRS], and extensively cross-indexed and digested, as well as 'updated' " and "used as case precedent by staff attorneys preparing subsequent GCMs." *Id.* at 682.[19] The memoranda were also used by agency personnel as "guidance as to the positions to take in negotiations ... with taxpayers." *Id.* The Court of Appeals concluded that the agency had to disclose the documents because it was relying upon them "as accurate representations of agency policy not the ideas and theories which go into the making of the law but the law itself." *Id.* at 683 (internal quotation omitted).[20] *See also, Tax Analysts,* 117 F.3d at 617(documents that were routinely used and relied upon by agency personnel ordered disclosed even though they were nominally nonbinding).

■ Another factor to be considered "is the nature of the decisionmaking authority vested in the office or person issuing the disputed document." *Taxation With Representation Fund,* 646 F.2d at 679. If the person or body issuing the document has final authority over the relevant decision, it is likely that the document represents a final action of an agency, and must therefore be disclosed as agency working law. *Id.* at 680.[21]

A final factor used to determine whether a challenged document functions as agency law is whether it is sent from a subordinate to a superior or vice versa. "[T]he paradigm of 'final opinions' [is that the documents] typically flow from a superior with policymaking authority to a subordinate who carries out the policy." *Brinton,* 636 F.2d at 605.

The analysis of "informal adoption" in the existing caselaw turns on whether or not documents from line agencies constituted "working law." Neither the parties nor this Court have found any case discussing informal adoption of predecisional documents that did not turn on whether the disputed documents were being used by agency staff as working law.

**19.** By contrast, in *Arthur Andersen & Co. v. Internal Revenue Service,* 679 F.2d 254 (D.C.Cir. 1982), the D.C. Circuit permitted the agency to withhold drafts of Revenue Rulings and accompanying background notes because "these documents could not and do not serve as agency 'working law,' providing substantive guidance in future decisions." *Id.* at 259. There was no evidence that the documents "were consulted as sources of agency law by IRS employees" and "[t]his contrast[ed] markedly with the documents ordered released in *Taxation With Representation*[ ] which ... were indexed, compiled, and consulted as sources of agency law by IRS employees." *Id.*

**20.** *See also, Taxation With Representation Fund,* 646 F.2d at 683 (explaining that certain Technical Memoranda also had to be released because "[a]s in the case of GCMs, these documents have been *informally adopted* by the agency as explanations of its policy, and are used by personnel within the agency as the 'working law' of the agency") (emphasis added).

**21.** On the other hand, where documents are issued by a person or body without final decisionmaking authority, those documents likely may be withheld pursuant to the privilege. *Taxation With Representation Fund,* 646 F.2d at 680 (citing *Renegotiation Board*). In *Renegotiation Board,* the Supreme Court held that reports prepared by Regional Renegotiation Boards could be withheld because only the full Board had the authority to make final decisions. The Regional Board Reports were recommendations that were used "as a basis for discussion by the full Board." 421 U.S. at 185, 95 S.Ct. 1491.

However, where an agency employee or body has *de facto* final authority, even if some other person or body has the formal power to overrule a decision, this factor may weigh in favor of disclosure of documents issued by the subordinate employee. *Schlefer v. United States,* 702 F.2d 233, 243 (D.C.Cir.1983).

### 2. OMB Documents Do Not Fall within "Working Law" Analysis

 In considering the OMB documents at issue in the Government's Partial Objection, we must start by looking at their "function and significance in the ... decisionmaking process." *Taxation with Representation Fund,* 646 F.2d at 678. It is clear from the Government's supporting declarations that the documents and their role in the decisionmaking process of OMB differ significantly from the documents at issue in the informal adoption cases that have dealt with agency "working law." In large part this is because OMB operates in a very different fashion and has different responsibilities than the agencies involved in those cases.

OMB is an agency within the Executive Office of the President ("EOP"). OMB is not an operating "line agency" of the Executive Branch. OMB does not regulate an industry, unlike the Department of Energy, whose documents were at issue in *Coastal States.* OMB does not adjudicate cases, unlike the National Labor Relations Board, whose documents were at issue in *Sears.* OMB does not implement substantive programs, unlike the Department of Health and Human Services ("DHHS"), whose documents have been the subject of many deliberative process privilege cases. *See Sutter v. DHHS,* 1987 WL 108961 (D.D.C.1987).[22] OMB does not handle law enforcement responsibilities, unlike the Internal Revenue Service, whose documents were the subject of *Taxation With Representation Fund,* and *Tax Analysts.* In short, OMB simply does not perform the traditional functions of the "line agencies" that have been the subject of the working law cases.

Instead, OMB "is a policy office within the [EOP] and [its] main role is to advise and assist the President in his supervision and oversight of the Executive Branch with respect to budget and management issues." Locke Decl. ¶ 5. OMB deals with the White House, other EOP Offices, Executive Branch departments and agencies, and the Congress. *Id.* "OMB does not deal directly with the public." *Id.*[23] It "assists the President in the preparation of the Federal Budget," and has a coordinating function, working to assure that legislation proposed by the Executive Branch (as well as agency testimony and reports submitted to Congress) are consistent with the Administration's policies. Smythe Decl. ¶ 3.

Because of this fundamental difference in the role OMB plays in the Executive Branch decisionmaking process, these documents are different in kind from those analyzed in the cases concerning informal adoption. Thus, it is simply not meaningful to analyze whether these OMB documents serve as agency "working law" as that phrase has been used in the cases discussed above. These documents are not relied upon by agency staff for guidance and precedent in administering public programs, or regulating an industry, or in adjudicating cases, because OMB simply does not perform these kinds of functions. In sum, due to its position within the Executive Branch and its role as an adviser to the President and a coordinator of policy, the OMB documents at issue here simply do not fit within the framework of the "working law" analysis.

The problem before the Court, then, is that the existing cases involving "informal adoption" have all turned on an analysis that is inappropriate in this OMB context.[24] The differences between OMB and line agencies certainly demonstrate how "[t]he cases in this area are of limited help" because applica-

---

**22.** *Sutter* held that a Medicare rule published in the Federal Register had been "formally and expressly adopted" within the meaning of *Coastal States.* 1987 WL 108961.

**23.** "To the extent that OMB has communications with the public, these communications typically concern either the public's interaction with one of the 'line agencies' ... or else the Executive Branch's views, on a legislative matter." Locke Decl. ¶ 5.

**24.** The literal language of the phrase is not helpful as the word "informal" is itself susceptible of multiple definitions. *See e.g.,* BLACK's LAW DICTIONARY 536 (Abridged 6th Ed.1991)(defining "informal" as "[d]eficient in legal form; inartificially drawn up"); Oxford English Dictionary (2d Ed.1989)(1. Not formal. 1.a. Not done or made according to a recognized or prescribed form; not observing forms; not according to order; irregular; unofficial, disorderly; 1.b. Done, performed, etc. without formality or ceremony; unceremonious).

tion of the deliberative process privilege is highly dependent upon the specific documents and administrative process at issue. *Coastal States*, 617 F.2d at 867.

In this situation, where the existing analysis for informal adoption is not applicable, the Special Master should focus only on whether the documents in this R & R meet the two core requirements of the deliberative process privilege, that is whether they are predecisional and deliberative. This approach is consistent with the emphasis the courts have repeatedly placed on the "function and significance" of disputed documents within the context of a particular agency's decisionmaking process. *See Taxation With Representation Fund*, 646 F.2d at 678.

Courts must always be attentive both to the public's interest in knowing the bases for final agency policy and to the necessity of safeguarding freewheeling agency debate in order to foster high quality administrative decisionmaking. However, the overly expansive interpretation of "informal adoption" used in R & R # 123 would come at the cost of protecting robust agency debate without promoting the public's interest in understanding the rationales for agency policy which has actually been adopted. That is especially true here with an agency whose role is primarily advisory and whose documents are likely, by their nature, to be both predecisional and deliberative. In the absence of a judicially established standard, suited to OMB's unique role, for determining whether the documents have been "informally adopted", the Court declines to find that their predecisional status has been lost.

 The documents at issue in R & R # 123 were found by the Special Master to have lost their privileged status because the Government could not prove that they were not expressly used by the agency or did not reflect announced agency policy. This standard was erroneous as a matter of law. Thus, the documents retain their privileged status [25] but must still be remanded to the Special Master for an examination of whether they should be released on the basis that Joint Defendants' need outweighs the Government's privilege.

## F. Joint Defendants' Need for Privileged Documents

 Finally, the Special Master correctly states that the deliberative process privilege "is qualified and can be overcome by a sufficient showing of need." R & R # 123 at 22. "[C]ourts will balance the competing interests of the parties by considering factors such as the relevance of the evidence, the seriousness of the litigation, the role of the government, and the possible future timidity of government employees." *Id.* (citing *In re Sealed Case*, 121 F.3d 729, 737–38 (D.C.Cir.1997)). Balancing these factors, the Special Master recommended that several documents be released because the Joint Defendants' need outweighs the Government's privilege. These recommendations were based on his usual, careful document-by-document review.

The Government objects to these recommendations but does not challenge the factors considered by the Special Master. Rather, its primary complaint is that the Special Master was satisfied with what it asserts were overly speculative and generalized claims of relevance by the Joint Defendants. Gov't Mem. at 20. The Court is persuaded, however, that the Special Master has carefully considered each individual document in the context of the claims and defenses in this case and recommended disclosing only those which, at this stage of the

---

**25.** The Special Master found the documents identified for remand in the accompanying Order not privileged because of the Government's failure to prove that they do not "reflect[] the Administration's policy," R & R # 123 at 80–81 (CD # 29), or because the documents "appear[] to reflect the agency position." *Id.* at 59 (CD # 54). In addition, his recommendation as to some of them was based on the mistaken view that the Government was required to explain the differences between drafts and final documents.

The Court assumes that the remanded documents were all found to be both predecisional and deliberative because the recommendations used the language that the Special Master used in discussing informal adoption, an issue that is relevant only to otherwise privileged documents. Of course, if this assumption is incorrect, the Special Master should clarify his reasoning on remand.

litigation,[26] are sufficiently relevant to warrant his finding that Joint Defendants' need outweighs the Government's privilege.

---

**26.** As to several documents, the Government's arguments about their supposed irrelevance are premature because that conclusion depends on the resolution of legal arguments such as those contained in pending summary judgment motions.